## FANNIE HINDS ET AL. V. EMMA HINDS.

FILED NOVEMBER 3, 1898.    No. 9836.

Descent and Distribution: PERSONALTY. Under the provisions of sec-
tion 30 and section 176, chapter 23, Compiled Statutes, the per-
sonal property of a childless intestate, after the payment of his
debts, descends to his widow, to the exclusion of his brothers
and sisters who survive him and the children of other brothers
and sisters whom he had survived.

ERROR from the district court of Washington county.
Tried below before BAKER, J.  *Affirmed.*

*Walton & Mummert* and *Osborn & Aye,* for plaintiffs in
error.

*F. S. Howell, contra.*

RYAN, C.

The facts, as well as the theory, upon which the de-
fendant in error based her prayer for relief, are disclosed
by the findings and judgment of the district court of
Washington county, and these, condensed, are as fol-
lows: May 9, 1896, Alfred W. Hinds died intestate in
said county, leaving surviving him his wife, the defend-
ant in error, but no child. His nearest relations by con-
sanguinity were brothers and sisters. In a remoter de-
gree there were nieces and nephews, the daughters and
sons of deceased brothers and sisters of Alfred W. Hinds.
At the time the judgment under review was rendered
there was in the hands of the administrator of the estate
of Alfred W. Hinds personal property of the value of
$20,000, subject to distribution; all the debts of said es-
tate having been paid or provided against. Under these
conditions found by the court to exist it was adjudged
that the widow was entitled to all the personal property
of the intestate.

The surviving relatives of Alfred W. Hinds above in-

39

dicated, as plaintiffs in error in this court, contend that one-half the personal property of the intestate in the hands of the administrator of his estate should be distributed among them; and this contention is based upon their construction of such portions of our statute as are applicable to the facts above stated, which are portions of section 30 and of section 176, chapter 23, Compiled Statutes. It is provided in section 30 aforesaid that when any person shall die seized of any lands, etc., they shall descend, subject to his debts, in equal shares to his children, etc. In section 176 above referred to there are various provisions for the distribution of the personal property of persons dying intestate in this state. These provisions close with the following: "Sixth. The residue, if any, of the personal estate shall be distributed in the same proportion, to the same persons, and for the same purposes as prescribed for the descent and disposition of the real estate, except that the widow, if any, shall be entitled to receive the same share of such residue as a child of the intestate would be entitled to." It is insisted by plaintiffs in error that the language just quoted implies the existence of children to entitle the widow to a distributive share of the personal property, for it is said: "If there be no child or children in existence, the term or phrase has no possible significance, and it might as well be argued that under the Nebraska statute the widow would take nothing at all unless there be a child or children, or representative of a deceased child or children in existence." This argument is just as applicable to one of the provisions of section 30 aforesaid as to the sixth subdivision of section 176. To illustrate this applicability we quote from section 30: "When any person shall die seized of any lands, tenements, or hereditaments, or of any right thereto or entitled to any interest therein in fee simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, in the manner following: First. In equal shares to his children," etc. The line of reasoning of

plaintiffs in error, applied to this provision, would be that the statute first entitles children of an intestate to distribution of his property. The use of the word "children" implies that there must be more than one child to render applicable the last above quoted provision of the statute. Therefore, if there be but one child, the estate must be inherited by other relatives than such child, who could take nothing. In enforcing these views, however, plaintiffs in error repudiate this application of their argument and insist that if there was one child such child would take one-half of the personal property and the widow the other half; and therefore, as we understand it, the brothers and sisters of the deceased must, as representatives of the supposed child, take one-half of the entire estate to which, if it did exist, it would be entitled. Let us further illustrate the practical workings of the theory of plaintiffs in error. If there were left surviving two children, the personalty would be divided into three equal parts, of which parts the widow would be entitled to one. If there was but one child, it would take half and the widow the other half. If there was no child, the widow would be entitled to precisely the same distributive share, and no more, than if one child had survived. It seems to us that this is an instance of the *argumentum ad absurdum*. Plaintiffs in error claim to have support for their contention in *Harrell v. Harrell*, 8 Fla. 46, wherein were considered the rights of a widow where there was no child. In the case just cited there was omitted from the quotation of a portion of the section of a statute of 1828, defining the rights of a widow in the personal property of her intestate husband, several words, and this omission renders unintelligible the language of the court with reference to that section as quoted in that opinion. With this omission corrected the language of said section pertinent to our purpose is as follows: "If there be no children, or if there be but one child, in that case she [the widow] shall be entitled to one-half, but if there be more than one child, in that

case she shall be entitled to one-third part in fee simple, except slaves, in which she shall have a life estate, and such claim shall have preference over all others." It was with reference to the above quoted provisions that the supreme court of Florida, by Du Pont, J., used this language: "But the question recurs what shall be the measure of the widow's interest where she elects, under the circumstances of this case, to take a child's part? For her it is insisted that the child's part amounts to the entire estate; that forasmuch as the child would take the entire estate if there were no widow, so the widow will take the whole estate where there is no child. This argument scarcely has the merit of speciousness. It is wholly illogical. The act of 1828 defines very clearly the measure of her interest as dower, viz., one-half. If that be not the measure of her interest under the act of 1838, then she has none. It is very evidently the intention of the statute to place the claim of the widow upon the same footing whether there should be one child or no child." It should be remarked that the act of 1838 above referred to simply provides that the interest of the widow in her share shall be absolute, and confers upon her the power accordingly to dispose of the same, so that by the act of 1838 no change was effected which qualified the act of 1828, in so far as the latter is useful for our purpose. Recurring to the part of the section quoted from the act of 1828 we note that that section provides that the share of the widow shall be the same if there are no children, as if there is one child; hence the reasoning of the court is not applicable to our section 176, chapter 23, Compiled Statutes. If any inference can be legitimately drawn from the case of *Harrell v. Harrell, supra*, it is that the language of the statute therein considered is proper to sustain the contention of plaintiffs in error, and that not being found in our statute, the presumption might be against the soundness of such contention.

In considering the provision of section 176, chapter 23,

Compiled Statutes, that the widow, if any, shall be entitled to receive the same share of such residue of the personal property that a child of the intestate would be entitled to, counsel for plaintiffs in error, in their brief, say: "This subdivision must be construed with reference to its subject-matter, and the pivotal point upon which it must turn are the words, 'except that the widow, if any;' therefore without a widow this subdivision has no application. To give it application, therefore, a widow must exist. A widow existing, therefore, we must inquire what a child's share would be. It is obvious that where a widow exists a child can in no event receive more than a like amount that the widow would receive. If, therefore, there be but one child, the child would take one-half, and the widow would take one-half; that being the same share that such child would be entitled to. It follows, therefore, that a child cannot take under that subdivision unless there be a widow, and, therefore, a widow cannot take under that provision any more than a child could take, which in no event could exceed one-half, but might be less if there was but one child. It is plain that if there were no widow, the child or children would inherit under another subdivision, because the subdivision now under consideration does not provide for the inheritance of a child, but provides only what share a widow shall take, and which share, as plainly expressed in the statute, must be that that a child would take. Repeating our former proposition then, that there must be a widow in existence in order to make the subdivision apply, and the widow's right must be measured by what a child would take if the widow existed, and therefore she cannot take more than the largest estate a single child could take, which is precisely one-half." Let us now apply this paradoxical language to the case at bar. Emma Hinds, the widow, takes a child's share, which is one-half, because of the language of subdivision six, which makes her right to take a child's share dependent upon the existence of a widow. But what becomes of the

other half? In one part of the brief above quoted counsel say if there be but one child, such child takes one-half and the widow takes the other half. In this case there is no widow but Emma Hinds, who, therefore, as such, takes the other half. She is thus invested with one-half the title by being entitled to a child's share, and she is entitled to the other half because, in fact, she is the widow; from which it results that she has the entire title, just what she claimed and was adjudged entitled to by the district court. It does not appear to us that the statute is ambiguous or imperfect. The widow, if she takes a child's share, takes it by virtue of being the widow, and not because it is assumed that she is actually a child. In effect, her relationship to the intestate is declared by the statute to be such that she is entitled to the same interest in his personal property that she would be entitled to if she had been his child. There is no attempt to declare that for any purpose she is not to be deemed a widow, but that as such, under certain conditions, she is entitled to receive just what a child of his would be entitled to. If he has no children, the right to take is conferred upon her as a widow, but her status as such is not changed. The judgment of the district court was right and is

AFFIRMED.