FERDINAND ZIMMERER ET AL., APPELLANTS, V. HARLEY L. STUART ET AL., APPELLEES.

FILED FEBRUARY 28, 1911.   No. 16,220.

1. **Municipal Corporations:** ORDINANCES: REPEAL. On the 9th day of December, 1897, the mayor and council of the city of L. passed an ordinance conferring upon one Z. the authority to erect and maintain a telephone system in said city without limitation of the time of the duration of the right, except that it was provided that Z. should "erect and maintain a suitable central office, with proper switchboards and apparatus for a complete telephone system in said city for the period of two years." On the 13th day of March, 1900, another ordinance was passed, at and upon the request of Z., granting the exclusive right to occupy the streets and public grounds of the city with said system for the period of 10 years. By this later ordinance it was provided that the rights secured to Z. under the former one were reserved and confirmed in him. The last section repealed all ordinances in conflict with the later one. *Held,* That with the exception of ratifying and validating the occupation of the streets and public grounds of the city by the poles and wires during the time in excess of the two years, the former ordinance was repealed, and the rights of the parties were to be measured by the terms of the later and repealing ordinance.

2. ———: ———: VALIDITY. "When a city ordinance contains valid and void provisions, the valid portion will be upheld if it is a complete law in itself, capable of enforcement, and is not dependent upon that which is invalid." *In re Langston,* 55 Neb. 310. Therefore, where the ordinance granted an "exclusive" right to occupy the streets, the word "exclusive," if invalid, could be eliminated and the remainder of the ordinance stand, providing the word did not constitute an inducement to the passage of the ordinance.

3. **Descent and Distribution:** CHARACTER OF ESTATE. As a general rule

the character of the estate at the death of the intestate, as impressed upon it by his act, determines the course of its descent.

4. ———: ———. By imposing a limitation of 10 years as to the time within which the poles and wires of a telephone system might occupy the streets and public grounds of the city, the reservation of the right of the city to cause the poles and wires to be removed during the term, the taxing of the property as personalty by the city officers, the execution of a chattel mortgage upon the system by the owner to secure a debt, and the owner never having attached the system to any real estate owned by him, all the parties to the contract are *held* to have treated the property as personal, and the act of the owner to have fastened that character upon it and determined the course of its descent upon his decease.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Rich, O'Neill & Gilbert* and *J. H. Linderman,* for appellants.

*E. A. Cook, E. M. Morsman, Jr.,* and *Warrington & Stewart, contra.*

REESE, C. J.

On the 9th day of December, 1897, the mayor and council of the city of Lexington passed an ordinance, of which the following is a copy:

"ORDINANCE NO. 137.

"An ordinance granting the use of the streets of the city of Lexington to George Zimmerer for the purpose of erecting poles and placing wires thereon for telephone purposes, and authorizing him to erect and maintain a telephone system in said city and regulating the same, and providing a penalty for injuring or destroying the same.

"*Be it enacted by the mayor and council of the city of Lexington, Nebraska:*

"Section 1. That George Zimmerer is hereby authorized to erect and maintain a telephone system in the city of

Lexington, and is hereby granted the privilege to erect poles in the streets of said city and string wires thereon for telephone purposes; provided that none of said poles shall be erected more than one foot from the sidewalk, and shall be placed in the ground at least five feet, and shall be made substantial, and no wire shall be strung less than 18 feet from the ground; provided also that said poles shall not be placed so as to interfere with the electric light poles and wires, nor with the water mains and hydrants of said city.

"Section 2. That said George Zimmerer shall erect and maintain a suitable central office, with proper switchboards and apparatus for a complete telephone system in said city for a period of two years.

"Section 3. That the charges for the use of the telephones in said system shall not exceed the sum of $2 per month for stores, offices and other public places, and $1.50 for residences, and shall not exceed the sum of $1.00 per month where the patron owns his own telephone.

"Section 4. That it shall be unlawful for any person to cut down, dig up, or destroy any poles, or to cut, break, or destroy any wires, or injure any instrument belonging to and used in said system. That any person who violates the provisions of this section shall, on conviction thereof, be fined in any sum not exceeding $100 and shall be committed to jail until such fine and costs are paid.

"Section 5. That if at any time it becomes necessary for the city to have any of the poles or wires in said system removed, or in case said poles or wires interfere with the removal of any building in said city, the said George Zimmerer shall at once upon notice remove said poles or wires until the necessity for their removal no longer exists.

"Section 6. That all ordinances or parts of ordinances in conflict herewith are hereby repealed."

About the same time the said Zimmerer entered into contracts with proposed patrons of his system by which he agreed to furnish, and they agreed to take, telephones for the term of two years. Acting under the provisions of

the ordinance, Zimmerer installed a limited number of telephones, placing a small switchboard in a rented room, and setting the poles in the streets. The development of the system was evidently retarded for lack of funds, Zimmerer and his wife having charge of the operation of the system, no others, apparently, being interested. On the 25th day of August, 1899, Zimmerer borrowed the sum of $1,750 from the first National Bank of Lexington, and to secure the payment of his note given for the payment of the same executed and delivered to the bank a chattel mortgage on the whole system, setting forth in detail the telephones, lines, poles, switchboards, etc., closing with the recital that it was "understood that this mortgage covers all and every kind of property connected .with the telephone system of said mortgagor." On the 13th day of March, 1900, the mayor and council of the city of Lexington duly enacted and passed another ordinance, of which the following is a copy:

"ORDINANCE No. ——.

"An ordinance granting the exclusive use of the streets and alleys of the city of Lexington, Nebraska, to George Zimmerer, his successors or assigns, for the period of ten years for the purpose of erecting poles and placing wires thereon for local telephone purposes, and authorizing the erection and maintenance of a telephone system and fixing the rate of charges in said city, regulating the same, and providing a penalty for injuring and destroying the same, and providing conditions for the termination of said franchise.

"*Be it ordained by the mayor and council of the city of Lexington, Nebraska*:

"Section 1. That George Zimmerer, his successors or assigns, is hereby granted the exclusive right and privilege for a period of ten years from the date of the passage, approval and publication of this ordinance, to establish and maintain a local telephone system in the city of Lexington, Nebraska, and for the purpose the said George Zimmerer, his successors or assigns, is hereby granted the

exclusive right and privilege to erect and maintain poles and wires and the appurtenances thereto necessary, through, upon and over the streets, alleys and public grounds of said city of Lexington; provided that said George Zimmerer shall at all times, when requested by the proper authorities of said city, permit the poles and fixtures to be used for the purpose of placing and maintaining thereon, free of charge, any wires which may be necessary for the use of the police or fire departments of the city of Lexington, Nebraska; and further provided that none of said poles shall be removed more than one foot from the sidewalk and shall be placed in the ground at least five feet and shall be made substantial, and no wire shall be strung less than 20 feet from the ground; and provided further that said poles shall not be placed upon and interfere with the electric (light) poles and wires, nor with the water mains and hydrants in said city.

"Section 2.   That said George Zimmerer, his successors and assigns, shall erect and maintain a suitable central office, with proper switchboards and apparatus for a public telephone system in the said city during the term of the grant or franchise, and said city shall also during said term be furnished and kept in repair two telephones free of charge during the time aforesaid.

"Section 3.   That the charges for the use of the telephones in said system shall not exceed the sum of $2 per month for stores, offices and other public places, and $1.50 for residences per month.

"Section 4.   That it shall be unlawful for any person to cut down, dig up or destroy any poles, or to cut, break or destroy any wire, or injure any instrument belonging to and used in said system.   That any person violating the provisions of this section shall, on conviction thereof, be fined in any sum not exceeding $100 and shall be committed to jail until the fines and costs are paid.

"Section 5.   That the rights and franchise herein granted are upon the express condition that the said George Zimmerer, his heirs, executors, administrators and

assigns, shall at all times within the period of this franchise maintain a complete and working telephone system in said city and provide telephone connections for the inhabitants of said city at the rates herein stated, and in case of any failure of said George Zimmerer, his heirs, executors, administrators or assigns, to comply with said conditions, the mayor and council of said city of Lexington may, by resolution passed, after 30 days' notice to the said George Zimmerer, his heirs, executors, administrators and assigns, or resident agent, declare the franchise hereby granted forfeited, and all rights of said George Zimmerer, his heirs, executors, administrators and assigns, shall thereby be determined and terminated.

"Section 6. That if at any time it becomes necessary for the said city to have some (any) of the poles or wires in said system removed, or in case the said poles or wires interfere with the removal of any buildings in said city, the said George Zimmerer shall, within 48 hours after notice in writing by the proper officers of said city, remove such poles or wires until the necessity for their removal shall no longer exist.

"Section 7. That all rights secured by or accruing to said George Zimmerer under and by virtue of ordinance No. 137 of said city of Lexington, Nebraska, are hereby reserved and confirmed in the said George Zimmerer.

"Section 8. That all ordinances or parts of ordinances in conflict herewith are hereby repealed."

This ordinance was passed at the request of Zimmerer, and he accepted and agreed to all its provisions. He and his wife continued to extend and operate the telephone system until the 6th day of September, 1900, when he died, leaving no issue. Upon his death, his widow took personal charge of the system, paid the debt secured by the chattel mortgage, and extended the lines and increased the efficiency of the telephone plant, and so continued until th 11th day of June, 1903, when she intermarried with Harley L. Stuart, defendant in this action. After their marriage defendant and his wife continued to extend

and develop the system, each contributing their time, labor and money, until the 24th day of December, 1907, when she died testate, leaving surviving her her husband and an infant daughter. Her will was executed October 13, 1905, prior to the birth of the daughter. By the terms of the will she devised and bequeathed all her real and personal property to her husband, defendant herein. The will was duly admitted to probate on the 20th day of January, 1908. The record is silent as to the date of the commencement of this action. On the 22d day of August, 1908, Ferdinand Zimmerer, the father of George Zimmerer, for the consideration of "one dollar and natural affection" executed a conveyance to his wife, who was the mother of George, deceased, by which he sought to transfer to her an undivided half interest in the telephone system, subject to an interest contracted for by other parties, the extent of which does not appear. On the 24th day of August, 1908, the amended petition was filed.

From the averments of the pleadings, the stipulations of the parties entered into upon the trial, and the evidence adduced thereon, the issue presented by plaintiffs is that the franchise and telephone system is and was, at the time of the death of George Zimmerer, real estate—an hereditament—and therefore descended to his father, subject only to the life estate of the surviving widow, under the law of descent of real property as it then stood, and upon the termination of her life his title became absolute. The action is to quiet title in him and his wife, and for an accounting of profits.

The contention of defendants is that the property should be treated as personalty, and, under the law as it then existed, vested in the widow of George Zimmerer, subject to the payment of debts, etc.; that, she being the owner, her will vested the title in her surviving husband, subject to the rights of the infant child, if any. We then have the one question presented: Did the property descend to the father of the deceased, or was it personalty and subject to distribution under the law then existing as personal

property? We deem it proper to note here that there is no question in litigation in which the rights of the city of Lexington are in any degree involved. Indeed, under the provisions of the later ordinance, it may be that the right to occupy the streets and public grounds has terminated, but that question is not before us. The cause was tried to the district court, and a finding and decree were entered dismissing plaintiffs' petition, and from which they appeal.

It is strongly urged that there was no limit of time of the duration of the franchise granted by the former ordinance, and therefore the right to occupy the streets of the city was a perpetual one, and that thereby the provisions of the seventh section of the later ordinance continued that right in perpetuity. The provisions of the former ordinance are in some respects vague and uncertain. It is within common knowledge that a complete telephone system cannot be successfully maintained without "a suitable central office with proper switchboards and apparatus," as required by the second section of the earlier ordinance, and from this it is argued that the requirement of that section that the switchboards and apparatus shall be maintained "for a period of two years," coupled with the fact that the contracts with the subscribing patrons were limited to that time, demonstrates that it was not the intention of either the city or Zimmerer that the right should continue for any longer period, and therefore the franchise was not a perpetual one. It is also contended, with the citation of authority, that the city had not the right or power to grant a perpetual franchise. We do not deem these questions of controlling importance, and they are undecided. While it may be that a right granted by an ordinance, and a contract entered into therein with a party to it, cannot be abrogated and destroyed by a subsequent ordinance, yet if the second ordinance was passed upon the request and application of the party and its terms and conditions are fully accepted and ratified by him, as stipulated upon the trial as having been

accepted "together with all its terms and provisions," we know of no reason why the second ordinance may not be valid and binding upon the parties to it. This second ordinance granted an exclusive right to occupy the streets, which the first did not. It also extended the term of the franchise to ten years from two years, as was doubtless understood to be the duration of the time allowed by the first. It also provided for the free use of two telephones by the city, which was not contained in the former one. It is true that by the seventh section of the later ordinance the rights accrued to Zimmerer under the former one were reserved and confirmed in him, but this could only apply to such as were not abrogated by the second ordinance, and it is very clear that one of the purposes of the second ordinance was to make definite and certain the time of the duration of the rights granted. In other words, the occupation of the streets and public grounds within the city were legalized and rendered valid, as the two-year term had before that time expired, and, if that was the limitation, said occupation had been without right during the excess. We are therefore limited to the provisions of the second ordinance and the conduct of the parties to it for the purposes of a decision of this cause, as the case turns upon whether the franchise and plant was real or personal property. If real property, it descended to the heir of Zimmerer, who was his father. Comp. St. 1899, ch. 23, sec. 30, subd. 2. It is conceded by plaintiffs that, "if the property in question in this action is 'personal estate,' it went to the widow, and the plaintiffs in this action have no interest therein," under the provision at the close of section 176 of the same chapter that "the widow, if any, shall be entitled to receive the same share of such residue as a child of the intestate would be entitled to," which would be the whole. So held in *Hinds v. Hinds*, 56 Neb. 545. If under this provision the property belonged to the widow, her will conferred it upon defendant, her later husband, and the decree of the district court should be sustained.

On the trial it was stipulated that "prior to the 6th day of August, 1907, there was duly passed and approved, and duly published within the time and in the manner required by law, an ordinance, which after its passage, approval and publication was accepted by Eva Stuart (the remarried widow of Zimmerer), and which said ordinance is marked defendants' exhibit 1, and is hereby offered and admitted in evidence." We have searched the record in vain for a copy of this ordinance, but it does not appear among the files anywhere. What it contains we cannot even conjecture. A copy should have been preserved in the bill of exceptions. It was probably considered by the court, and may have furnished an important aid in arriving at the court's decision.

It is contended by plaintiffs that the second ordinance of March 13, 1900, was absolutely void, for the reason that it granted an exclusive right to occupy the streets and other public grounds of the city of Lexington. It may be conceded that the grant of the exclusive privilege was void, but that would not necessarily render the whole ordinance invalid. In *In re Langston*, 55 Neb. 310, it was held that, "when a city ordinance contains valid and void provisions, the valid portion will be upheld if it is a complete law in itself, capable of enforcement, and is not dependent upon that which is invalid." We may therefore eliminate the word "exclusive," and a valid and perfect ordinance will yet remain. It must seem very clear that the use of that word formed no inducement to the mayor or members of the council to pass the ordinance. We therefore hold that the ordinance was not void, that it fixed the length of time the right of Zimmerer to occupy the streets should run, and that, after its passage and approval and the acceptance of and agreement to its provisions by him, his rights were to be measured by it.

The question then arises as to the character or quality of the property held by Zimmerer, whether real or personal—an hereditament which, upon his death, descended to his heirs, or personalty which went into the hands of

an administrator for distribution as personal property, without considering the rights of his wife during his lifetime. We think it can hardly be said that the plant constituted a permanent fixture attached to his real estate, for he had no such property to which it could attach. In 14 Cyc. 17, it is said: "As in some cases property descends to different persons according as it may be real estate or personal property, it frequently becomes necessary to determine its character for the purposes of descent and distribution. As a general rule, it may be stated that the character of the estate at the death of the intestate, as impressed upon it by his act, determines the course of its descent, so that when the heir and next of kin are different persons and have adverse interests there can be no election." *Jones v. Kirkpatrick,* 2 Tenn. Ch. 693; *Arlington Mill & Elevator Co. v. Yates,* 57 Neb. 286; *Edwards & Bradford Lumber Co. v. Rank,* 57 Neb. 323. There is a sharp contention between the parties as to the legal results of placing poles and wires upon the streets when permitted to do so by ordinance granting the right; the plaintiffs claiming that, as matter of law, the property becomes real estate and susceptible of being inherited, while upon the part of defendants it is claimed that this result does not necessarily follow. Elaborate and exhaustive briefs are filed and many authorities are cited.

We are persuaded that the case must turn upon the ordinance and the conduct of the parties to it. As we have seen, the right to occupy the streets and public grounds of the city is limited to a term of 10 years. Assuming that the contract created by the passage of the ordinance and its acceptance by Zimmerer is faithfully carried out, the city could order the poles and wires removed at the end of the term and the title thereto would remain in Zimmerer. This would also be the case should he remove them without an order from the city. It is provided that, in case of any failure on his part to comply with the conditions imposed, the city may, after 30 days' notice, declare the franchise forfeited and his rights thereto shall

be terminated, that if at any time it becomes necessary for the city to have the poles and wires removed, or in case they interfere with the removal of any building, Zimmerer shall remove them upon notice so to do, and they shall not be replaced unless the necessity for their removal shall no longer exist. This places the poles and wires within the city subject to and within the control of the city. It is shown by the evidence that the city taxed the plant as personal property, and that on the 25th day of August, 1899, Zimmerer executed a chattel mortgage upon the whole plant to secure his note for the sum of $1,750. At no time during his life did he have the system, or any part of it, attached to any real estate the title to which was held by him. We are persuaded by these facts that not only Zimmerer himself, but the city council and officers, considered the character of the property that of personalty and treated it accordingly. This being true, and there being no act of Zimmerer shown by which he held and treated it otherwise, the character so given it would continue after his decease, and the title would vest in his administrator for distribution to his widow, he having no child nor children. It might be well to here observe that the equities of the case are largely with the defendants. There is no suggestion that plaintiffs ever contributed anything toward the installation or development of the property. From its inception until the death of Zimmerer his wife devoted much of her time and energies toward the upbuilding of the plant. At the time of his death it was, comparatively, a small affair. His widow, with her own funds, paid off the debt secured by the chattel mortgage, above referred to, and extended the system both inside and outside of the city, connecting the same with the original plant, placing an entirely new switchboard and operating devices in the central office, and after her marriage to defendant they jointly extended the lines both within and without the city, and finally, doubtless recognizing the labor and investment of her husband in the upbuilding of

the system, she, by her will, conferred the property upon him, and it now belongs to him and their child.

The decree of the district court is right, and it is

AFFIRMED.