LITTLE ROCK RAILWAY & ELECTRIC COMPANY. v. DOWELL.

Opinion delivered December 11, 1911.

1. CONTRACT—WHO MAY ENFORCE PERFORMANCE.—A mere stranger can not intervene and claim the benefit of a contract between other parties, in the absence of a new consideration or some prior right or claim against one of the contracting parties by which he has a legal interest in the performance of the agreement.   (Page 225.)

2. MUNICIPAL CORPORATIONS—LEGISLATIVE POWER.—A city council in the exercise of its legislative power, as in granting or amending a street railway franchise, is vested with a discretion which can be controlled by the courts only after abuse.   (Page 227.)

3. INJUNCTION—RELEASE OF FRANCHISE.—Where a city, in granting a franchise to a street car company, stipulated for free transportation of the mail carriers, the latter have no such interest in the contract as will entitle them to enjoin the city from releasing the street car company from its obligation to carry them free.   (Page 227.)

4. MUNICIPAL CORPORATION—POWER TO RELEASE STREET RAILWAY.—Where a city, in granting a franchise to a street railway company, stipulated that mail carriers should "be allowed to ride free,". the city did not exceed its powers nor abuse its discretion by subsequently amending the franchise so as to release the street railway company from its obligation to furnish free transportation to such carriers. (Page 228.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.
1.   Appellee as a mail carrier was divested of no vested right by the passage of the amendment to the original ordinance. Cooley, Const. Lim. 437, 471;  Black, Const. Law, 429; 8 Cyc. 895; *Id.* 904; *Id.* 938;  68 Ark. 368;  65 Ark. 30;  69 N. Y. 282; 135 N. Y. 222;  76 Fed. 130.   The Legislature may delegate

to municipal corporations the power to grant franchises, and an ordinance which grants a franchise has the force and effect of a statute. 81 N. W. 1046; 164 U. S. 471; 44 Ia. 505; 7 So. 8; 64 Ark. 152; 95 N. W. 952; 105 Wis. 672; 107 Wis. 493. The power thus vested in the council is a discretionary power, and a court of chancery will not undertake to control it. 88 Ark. 266; 85 Ark. 470; 142 U. S. 510; 151 U. S. 3; 53 W. Va. 465; 44 S. E. 271; 84 Hun 261; 34 N. Y. S. 1073; 55 Wash. 229; 104 Pac. 259; 52 Ga. 211; 43 Ga. 67; 142 Ind. 551; 42 N. E. 39; 132 Ind. 114; 31 N. E. 573; 79 Mich. 384; 44 N. W. 622; 66 N. J. L. 533; 49 Atl. 587; 122 Ga. 231; 50 S. E. 122; 41 La. Ann. 910; 7 So. 8; 165 Pa. 479; 30 Atl. 959. The conductor can not know when the mail carriers are on duty. 80 Ark. 158; 52 Fed. 197. The courts will not interfere unless it appears that the council has acted beyond its authority. 76 Fed. 281; 104 Md. 423; 166 U. S. 557.

*J. H. Harrod* and *Bratton & Fraser,* for appellee.

The franchise was a contract. 5 Ark. 595. The corporation was the agent of the people in making the contract. 46 L. R. A. 513. The right of the mail carrier to free transportation is a property right that can be enforced. 16 L. R. A. (N. S.) 651. The act was *ultra vires* and may be enjoined. Dillon, Municipal Corp. (3 ed.) vol. 2, § § 914-915; 196 U. S. 539. The city had no power to abrogate the contract the mail carriers had for free transportation. 27 N. Y. 611; 84 Am. Dec. 314; 71 N. Y. Supp. 1102; 74 *Id.* 1149; 174 N. Y. 507; 66 N. E. 1117; 33 N. W. 35; 5 Ark. 217; 67 Ill. 540.

McCULLOCH, C. J.   On September 27, 1901, the council of the city of Little Rock granted to the Little Rock Traction & Electric Company, appellant's assignor, a franchise to construct a street railway in the city and to operate the same for a term of fifty years. The franchise contained a provision, among others, that the railway company should pay to the city one per cent. of its gross receipts during the first ten years of the term, and increasing the percentage to be paid one per cent. during each successive period of ten years thereafter. It also contained a provision that "policemen, firemen and United States mail carriers in uniform shall be allowed to ride free." This franchise was accepted by said company, and was after-

wards assigned to appellant, and the street railway was operated thereunder. On December 5, 1910, the council passed an ordinance amending said franchise by striking therefrom the provision for the free transportation of mail carriers. Whereupon appellee, Martin Dowell, who is a mail carrier, instituted this action against appellant in the chancery court of Pulaski County to restrain the enforcement of said ordinance amending the franchise. He shows that he is a citizen and taxpayer of the city, as well as a mail carrier, and seeks relief on the ground that, as a mail carrier, he has a vested right to ride free under the original franchise, and that also, as a citizen and taxpayer, he has a right to prevent the relinquishment by the city of the provision for free transportation of mail carriers. Other mail carriers were subsequently joined as plaintiffs in the action.

The case was heard by the chancellor upon testimony tending to show, on the part of the appellees, that the free transportation of mail carriers was conducive to better mail service in the city, and, on the part of the appellant, that the original provision was considered by many citizens as an unfair and unnecessary discrimination in favor of mail carriers, and that the amendment would augment the revenues of the city by reason of the increased receipts of the railway company. A final decree was rendered declaring the amendment void, and restraining the railway company from failing and refusing to transport mail carriers free of charge upon its cars "while engaged on duty as mail carriers in the city of Little Rock and while going to work in the morning and returning from work in the evening, and while going to and returning from luncheon in the noon hour."

The first question argued is, whether a mail carrier has a vested right under the provision of the franchise as originally granted, giving him the right to free transportation. The answer to that question involves an inquiry as to the purpose of the provision and who were intended to be the beneficiaries. The city council derives its powers to grant such franchises from a statute authorizing it to do so for the benefit and convenience of the public. Kirby's Digest, §§ 5442 and 5448. The council does not act for individuals as such, but for the citizens of the municipality collectively. Therefore, when the provision was made in the franchise for the free

transportation of mail carriers, it was not intended as a benefit or a gratuity to the individuals who were or who might from time to time become mail carriers, but for some anticipated benefit to accrue to the public. The fact that those individuals incidentally derived a personal benefit from the provisions, apart from the general public, while acting as mail carriers, did not vest in them a right which they could insist on being continued during the life of the franchise. So far as the provision for free transportation operated in favor of mail carriers as such, it was merely a gratuity which could be recalled at any time, and the continuance of which they can not demand. The provision constituted a contract between the railway company and the municipality acting for the public, and no individual rights were involved. It did not constitute a contract between the railway company and the mail carriers, for they were not parties to the contract, and, as before stated, the provision was for the benefit of the public and not for the individuals. So far as it constituted a gratuitous benefit to the mail carriers, it came from the city and not from the railway company. *Oklahoma City* v. *Oklahoma Ry. Co.*, (Okla.) 16 L. R. A. (N. S.) 651.

As said by the New York Court of Appeals in a case which has been cited with approval by this court:

"A mere stranger can not intervene and claim by action the benefit of a contract between other parties. There must either be a new consideration or some prior right or claim against one of the contracting parties by which he has a legal interest in the performance of the agreement." *Vrooman* v. *Turner*, 69 N. Y. 282. This is the effect of our decision in the case of *Thomas Mfg. Co.* v. *Prather*, 65 Ark. 27.

It is said by a learned author on constitutional law that "the term 'vested right' relates to property rights only, and does not apply to personal rights." Black on Constitutional Law, p. 429.

Judge RIDDICK, speaking for this court and quoting in part from Mr. Black, said:

"Now, a vested right must be something more than a mere expectation based upon the anticipated continuance of existing laws. It must have become a title, legal or equitable,

to the present or future enjoyment of property in some way or another." *Steers* v. *Kinsey*, 68 Ark. 360.

We hold that no individual rights are involved in the franchise, and that appellees must derive their rights, if any they have, to restrain the attempted relinquishment of the provision for free transportation of mail carriers from their status as citizens, and as members of the general public, for whose benefit and convenience the franchise was granted.

A city council acts in a legislative capacity in exercising the powers conferred upon it to grant franchises for the public benefit. The power thus conferred upon a city council by the lawmakers is co-equal with the power in this respect of the Legislature itself, and in the exercise of this power a discretion is vested which can not be taken away by the courts. It is only an arbitrary abuse of the power which the courts should control; and when the exercise of that power and discretion is attacked in the courts, a presumption must be indulged that the council has not abused its discretion, but has acted with reason and in good faith for the benefit of the public. To proceed upon any other theory would be to substitute the judgment and discretion of the courts for the judgment of the members of the council with whom the lawmakers have seen fit to lodge this power. In *Hot Springs* v. *Curry*, 64 Ark. 152, this court approved the following quotation from Horr & Bemis on Municipal Police Ordinances, § 128:

"If an express power is given to a corporation to enact ordinances of a certain kind, the Legislature thereby trusts to the discretion of the council to determine just how far they shall go within the limits imposed; and there is every presumption that the council are not only actuated by pure motives, but that they are so familiar with the mischief to be remedied, and with defects of the prior regulations, as to be the best possible judges of the necessity for the enactment of the new law, and of the extent to which it is advisable to exercise the power granted. The council, and not the court, is the repository of this public trust, and it should be a plain case indeed to justify the latter in interfering with the determination of the council, or of questioning their motives or the cogency of their reasons for enacting the ordinance."

The same principle has been announced by this court as

to the conclusiveness which must be accorded by the courts to the findings of other tribunals in the exercise of power delegated by the Legislature. *Board of Improvement* v. *Pollard*, 98 Ark. 543.

The Supreme Court of Wisconsin very aptly states the same principle as follows:

"The power so vested in the common council is, within the limits prescribed, a discretionary power; and we must hold that a court of equity has no jurisdiction to restrain the common council from exercising such discretion, especially at the suit of a private party. * * * It is enough to say that a court of equity has no place in the chamber of the common council to supervise or superintend the proceedings of that body, while engaged in the exercise of legislative or discretionary functions." *State* ex rel. *Rose* v. *Superior Court of Milwaukee County*, 105 Wis. 651, 81 N. W. 1046.

It can not be said in the present case that the city council has arbitrarily abused its discretion by relinquishing to the street railway company without consideration and for insufficient reasons a valuable right of the public. The council reached the conclusion that no substantial benefit was derived by the public from providing for free transportation of mail carriers, it being the function of the Federal government to furnish adequate mail facilities to the inhabitants of the city and that the public interest would be better served by augumenting the revenues of the city to the extent of the percentage of the expected increase in the receipts of the company, at the same time removing what seemed to many citizens to be an unfair discrimination in favor of mail carriers. It was a question of what was best for the public welfare, and the city council reached the conclusion that it would be better to amend the franchise in the particular named.

The fact that the street car company is substantially benefited by the change in the franchise releasing it from the obligation to furnish transportation to mail carriers does not affect the question at issue, which is one of power in the city council to make the change in a fair exercise of the discretion lodged in that body. In this view we are greatly strengthened by the decision of the Supreme Court of the United States in *Worcester* v. *Street Railway Co.*, 196 U. S. 539. In that case

the city of Worcester, Massachusetts, had extended the franchise of the company so as to allow the occupancy of additional streets, on condition that the company would pave the streets between the rails and eighteen inches on each side thereof. The Legislature afterwards adopted a different system of taxation, and passed a statute absolving the railway company from the obligation to pave the streets. The city objected on the ground that the statute impaired the obligation of the contract between the city and the railway company. In disposing of the contention, the court said:

"It seems, however, plain to us that the asserted right to demand the continuance of the obligation to pave and repair the streets as contained in the orders or decrees of the board of aldermen granting to the defendant the right to extend the locations of its tracks on the conditions named does not amount to property held by the corporation, which the Legislature is unable to touch, either by way of limitation or extinguishment. If these restrictions or conditions are to be regarded as a contract, we think the Legislature would have the same right to terminate it, with the consent of the railway company, that the city itself would have. These restrictions and conditions were of a public nature, imposed as a means of collecting from the railroad company part, or possibly the whole, of the expenses of paving or repaving the streets in which the tracks were laid, and that method of collection did not become an absolute property right in favor of the city, as against the right of the Legislature to alter or abolish it, or substitute some other method with the consent of the company, even though as to the company itself there might be a contract not alterable except with its consent."

Upon the whole, we are of the opinion that the city council did not exceed its powers nor abuse its discretion in amending the franchise, and that appellees have no right to insist on the performance by the street railway company of the franchise as originally granted. The decree is therefore reversed, and the cause will be remanded with directions to enter a decree dismissing the complaint for want of equity and for further proceedings, if necessary, not inconsistent with this opinion. It is so ordered.

KIRBY, J., dissents.