PRESTON, C. J., EVANS and ARTHUR, JJ., concur.

---

GRANT VAN HORN, Appellee, v. CITY OF DES MOINES et al., Appellants; FRANK M. HARRIS, Intervener.

**MUNICIPAL CORPORATIONS:** Governmental Powers — Judicial
1 **Supervision.** Equity has jurisdiction to inquire whether a city has proceeded illegally in the exercise of its legislative powers.

**MUNICIPAL CORPORATIONS:** Ordinances—Repeal of Franchise. A
2 city council may repeal a franchise ordinance and enact an inconsistent substitute therefor when the holder of the former franchise consents thereto.

**MUNICIPAL CORPORATIONS:** Ordinances—Vested Interests. The
3 patrons of a street railway have no such vested interest in the *rate of fare* provided by the franchise ordinance under which the railway is operating as will prevent the city council from repealing said ordinance, with the consent of the street railway company.

**MUNICIPAL CORPORATIONS:** Ordinances—Title. The *title* of a city
4 ordinance need not minutely and specifically express every related and germane matter included in the *act.* Title to a street railway ordinance reviewed, and held sufficient to support many germane and related matters embraced in the act.

**MUNICIPAL CORPORATIONS:** Ordinances—Notice in re Franchise.
5 The adoption of a franchise ordinance for the operation of a street railway in a city organized under the commission form of government is valid when made in compliance with Sections 776 and 1056-a30, Code Supp., 1913. Sections 955 and 1056-a37, Code Supp., 1913, are not applicable to such a case.

**WORDS AND PHRASES:** "Inconsistent." Two or more statutes may
6 be "inconsistent" even though they are not *repugnant* or *irreconcilable.*

*Appeal from Polk District Court.*—JAMES C. HUME, Judge.

DECEMBER 15, 1922.

REHEARING DENIED APRIL 3, 1923.

ACTION in equity by a citizen, taxpayer, and patron of the Des Moines City Railway Company, to restrain the defendant city and its officers from giving effect to or enforcing an ordinance of said city known in the record as Ordinance No. 3147, which ordinance repeals a former ordinance and grants a new franchise to said street railway company. Frank M. Harris, also a resident and taxpayer of said city, and a stockholder of said street railway company, intervened, and joined the defendant city in resisting the petition of appellee. There was a decree in the court below for plaintiff, as prayed. All material facts are stated in the opinion.—*Reversed.*

*John Halloran, Reson S. Jones, Chauncey A. Weaver, J. G. Gamble,* and *Ralph Read,* for appellants.

*H. W. Byers, J. G. Myerly,* and *M. J. Mulvaney,* for appellee.

STEVENS, C. J.—I. Plaintiff, appellee herein, a citizen, a taxpayer, and a patron of the Des Moines City Railway Company, sought and obtained a decree in the court below, permanently enjoining the defendant city and its officers from putting into effect and enforcing Ordinance No. 3147 of said city. Ordinance No. 3147, by its terms, grants to the Des Moines City Railway Company, a corporation, a franchise to operate a street railway system in said city for a term of 25 years. Prior to the enactment of this ordinance, and in 1915, an ordinance known in the record as No. 2406, granting to the same street railway company a franchise to operate a street railway system upon the streets of said city for a like term, was enacted, and adopted by the voters of said city. Ordinance No. 2406 fixed the fare which the street railway company might charge at five cents each way for a single passenger; whereas, the later ordinance permitted the company to charge a fare of eight cents for the same service. Ordinance No. 3147 by its terms repeals Ordinance No. 2406, and is designed to be a complete substi-

tute therefor. The proposition to repeal Ordinance No. 2406 and to adopt Ordinance No. 3147 was submitted to the voters of appellant city at a special election on November 28, 1921. A majority of the electors voted in favor of the new ordinance. Before the date fixed therefor, appellee commenced this action, and obtained a temporary injunction restraining the appellant city and its officers from holding said election. An immediate appeal was taken to this court, upon application of the city, and an order was made modifying or suspending the temporary writ so as to permit the election to be held and the votes canvassed, without prejudice to the rights of the parties to the litigation. Upon final hearing, this order was approved, and the temporary writ dissolved. *Van Horn v. City of Des Moines,* 192 Iowa 1313.

Six propositions are set forth in appellee's brief, upon which he relies to sustain the decree of the court below. Briefly summarized, they are as follows: (1) That appellee has vested interests in and growing out of Ordinance No.

1. MUNICIPAL CORPORATIONS: governmental powers: judicial supervision.

2406, which will be impaired or lost by the repeal thereof or the enforcement of Ordinance No. 3147, and that the said ordinance is not subject to repeal by the city council without specific legislative authority, or the reservation of authority in said ordinance to do so, neither of which exists; (2) that said Ordinance No. 3147 violates Section 681 of the Code, which provides that "no ordinance shall contain more than one subject, which shall be clearly expressed in its title;" (3) that said Ordinance No. 3147 by its terms grants to the Des Moines City Railway Company an exclusive franchise, in violation of Section 955 of the Code; (4) that the election held on November 28, 1921, was illegal, for the reason that the notices required by Sections 955 of the Code and 1056-a37 of the 1913 Supplement were not properly published.

Appellants admit that the notice referred to in Section 1056-a37 was not published, but otherwise they join issue upon the above propositions, and challenge the jurisdiction and authority of a court of equity to hear and determine the issues involved or to grant the relief prayed; challenge the right of plaintiff to maintain this action; and assert that there is a defect of parties, in that the Des Moines City Railway Company

is not joined as a party defendant. No issue as to the reasonableness of Ordinance No. 3147 or of the right of the street railway company to collect fares in excess of five cents is involved upon this appeal. The issues for our decision are, therefore, the alleged illegality in the proceedings of the city council, and the right of appellee to maintain this action, and of a court of equity to grant him relief.

The principal grounds upon which appellants challenge appellee's right to relief in equity and to prevent the attempted repeal of Ordinance No. 2406 and the enactment of the proposed new ordinance are that, in the enactment thereof, the city council acted in a strictly legislative capacity, and that appellee has no such vested interest under Ordinance No. 2406 as to prevent its repeal and the enactment and adoption of a new ordinance, with the consent of the street railway company. So far as the action of the city council in the enactment and adoption of franchise ordinances is legislative, it may be conceded that it is not, ordinarily at least, subject to the control of a court of equity. But appellee does not in this case seek the aid of a court of equity to prevent the city council from validly exercising legislative functions, but to enjoin certain alleged illegal acts and procedure in the matter of the enactment thereof. A clear distinction must be recognized between the right of a citizen and taxpayer to maintain an action to restrain the valid exercise by a city council of its legislative functions, and an action in which an injunction is sought to restrain such officers from acting or proceeding illegally in the exercise thereof. We have repeatedly held that a court of equity may, in certain cases, at the suit of a taxpayer, restrain the illegal action of public officers. *McLaughlin v. City of Newton,* 189 Iowa 556; *Erickson v. City of Cedar Rapids,* 193 Iowa 109. In any event, the validity of Ordinance No. 3147 may be tested by an appropriate remedy; and we shall not too closely scrutinize the right of appellee to maintain this action, but will pass at once to a discussion of the legal questions which are, as we view them, decisive of this case, and which we find against him.

II. Ordinance No. 2406 contained a provision empowering the appellant city to forfeit the rights granted thereby to the

Des Moines City Railway Company; but no right of repeal is reserved therein, and no such right has been delegated to it by statute. Under the statutes of this state, a franchise ordinance does not go into effect, even after it has received the approval of the electors, until it is accepted by the grantee. By acceptance thereof, a contractual relationship between the municipality and the grantee is created. This is, of course, conceded by counsel for appellant, but see *Cleveland v. Cleveland Elec. R. Co.,* 194 U. S. 538 (48 L. Ed. 1109); *Columbus R. P. & Lt. Co. v. City of Columbus,* 249 U. S. 399 (63 L. Ed. 669).

2. MUNICIPAL CORPORATIONS: ordinances: repeal of franchise.

It is well settled by authority that a city council may not repeal an accepted franchise ordinance without the consent of the other party,—this for the reason that to permit it to do so would sanction a violation of the Federal Constitution, which prohibits the impairment of the obligations of contracts. The appellant city council, however, in this case, enacted Ordinance No. 3147 and submitted it to the electors for approval, with the consent of the street railway company. Two questions are thereby suggested for decision: First, did the appellant city possess authority to repeal Ordinance No. 2406 and to re-enact and put in force another ordinance, the provisions of which conflict in many particulars with the provisions of the prior ordinance, with the consent of the street railway company, as against the claims of third parties having vested interests which have accrued under said ordinance; and second, did appellee have a vested interest therein, which he could assert against the right of the council to repeal said original ordinance with the consent of the street railway company?

The law is well settled that a city council is without authority to repeal a franchise ordinance, in the absence of a reservation therein giving it such right, without the consent of the grantee, or where vested rights have accrued thereunder that will be affected by such repeal. *Baltimore Tr. & Guar. Co. v. City of Baltimore,* 64 Fed. 153; *Africa v. City of Knoxville,* 70 Fed. 729; *Levis v. City of Newton,* 75 Fed. 884, 897; *City of Belton v. Head,* (Tex. Civ. App.) 137 S. W. 417; *City of Santa Barbara v. Davis,* 6 Cal. App. 342 (92 Pac. 308); *Grand Trunk W. R. Co. v. City of South Bend,* 227 U. S. 544 (57 L. Ed. 633);

*City of Owensboro v. Cumberland Tel. & Teleg. Co.*, 230 U. S. 58 (57 L. Ed. 1389); *City of Des Moines v. Chicago, R. I. & P. R. Co.*, 41 Iowa 569; *City of Burlington v. Burlington Street R. Co.*, 49 Iowa 144; 2 McQuillin on Municipal Corporations, Section 825. The general doctrine that the power to enact carries with it the power to repeal is not applicable where vested interests intervene.

It is, however, equally well settled that a franchise ordinance may be repealed, with the consent of the grantee, where vested rights are not interfered with. *City of Kansas v. White*, 69 Mo. 26; *Cleveland v. Cleveland Elec. R. Co.*, supra; *Wood v. City of Seattle*, 23 Wash. 1 (62 Pac. 135); *Little Rock R. & E. Co. v. Dowell*, 101 Ark. 223 (142 S. W. 165); *Given v. Wright*, 117 U. S. 648; *Greensburg Water Co. v. Lewis*, (Ind.) 128 N. E. 103; *Zimmerer v. Stuart*, 88 Neb. 530 (130 N. W. 300); *Public Service Com. v. Westchester St. R. Co.*, 206 N. Y. 209 (99 N. E. 536); *Columbus R., P. & Lt. Co. v. City of Columbus*, 253 Fed. 499, 503; 2 Dillon on Municipal Corporations (5th Ed.) 919; Pond on Public Utilities, Section 116; 3 Abbott on Municipal Corporations, Section 919; 2 McQuillin on Municipal Corporations, Section 825; and cases cited supra. The street car company did consent in this case, and therefore the first proposition must be answered in the affirmative.

We come now to inquire what vested interest, if any, accrued to appellee under Ordinance No. 2406. It is not claimed that authority is granted to the street railway company by the new ordinance to remove any of its tracks or to discontinue or impair the service enjoyed by appellee or others similarly situated under the old ordinance. Appellee does not point out in argument what vested interests he claims accrued to him under the former ordinance, and, unless we are to hold that the fare fixed thereby created a vested interest in all patrons of the street railway company, we can conceive of no vested interest possessed by him that is taken away or interfered with by the new ordinance. Many cases brought by a taxpayer and a patron of a public service corporation asking a writ of mandamus to compel such corporation to provide service are cited by counsel, but these cases, such as *Independent Sch. Dist. of Le Mars v.*

3. MUNICIPAL CORPORATIONS: ordinances: vested interests.

*Le Mars City W. & L. Co.,* 131 Iowa 14, *Cascaden v. City of Waterloo,* 106 Iowa 673, *Huston v. City of Des Moines,* 176 Iowa 455, and *State v. Spokane St. R. Co.,* 19 Wash. 518 (53 Pac. 719), are not decisive of the question before us. A vested right or interest, within the meaning of those words as used in this connection, is a property right or interest, and not a mere privilege. No case directly in point is cited. The cases nearest in point are those holding that the right of mail carriers and others to ride free upon street cars is not a vested interest, and may be taken away by amendment to the ordinance granting such right. *Little Rock R. & E. Co. v. Dowell,* supra; *Asher v. Hutchinson W., L. & P. Co.,* 66 Kan. 496 (71 Pac. 813). *Baltimore Tr. & Guar. Co. v. City of Baltimore,* supra, cited by appellee, makes clear what is meant by the term "vested interest." In that case, the Baltimore Trust & Guaranty Company, as mortgagees and bondholders of a street railway company, doing business in the city of Baltimore, sought to enjoin the city council of that city from amending an ordinance so as to do away with a provision therein authorizing said railway company to double-track a certain street in said city of Baltimore. The court held that the plaintiff had a vested interest which could not be impaired or destroyed by an amendment to the ordinance granting the franchise to the street railway company. The record does not disclose that any vested interests have accrued to appellee under the old ordinance that he may assert in denial of the right of the council to repeal Ordinance No. 2406, with the consent of the street railway company.

III. The next point urged upon us by appellee is that Ordinance No. 3147 is invalid because it violates Section 681 of the Code, which provides that "no ordinance shall contain more

4. MUNICIPAL CORPORATIONS: ordinances: title.

than one subject, which shall be clearly expressed in its title." The title of Ordinance No. 3147 is as follows:

"An ordinance granting to the Des Moines City Railway Company, its lessees, successors, and assigns the right to construct, maintain, and operate a system of street railways in the city of Des Moines, with the poles, wires, appurtenances, and appliances, and authorizing said company, its lessees, successors, and assigns to permit the use of its tracks by interurban rail-

ways for terminal purposes, and authorizing said company, its lessees, successors, and assigns to furnish electric energy to interurban railway companies for the operation of interurban railways and for the transaction of their business, and prescribing the conditions and regulations under which said street railway shall be constructed, maintained, and operated, and providing for the relinquishment of certain claims and rights of said company, and providing that the city of Des Moines (when authorized to do so by law) may take over the street railway system of said company, and to repeal Ordinance No. 2406, passed October 2, 1915, and approved by the voters November 29, 1915, and Ordinance No. 2431, passed by the council on December 22, 1915, and all ordinances or parts of ordinances in conflict herewith.''

It is impracticable to incorporate the sections of the ordinance which it is claimed by counsel relate to subjects not covered by the title, but they include provisions relative to the operation of freight and mail cars by the street railway company over certain of its lines, and to the appointment of two supervisors to determine what acts shall be done and orders made affecting the quantity and quality of service required of the street railway company, and to fix schedules, routes, terminals, etc.; and provisions relating to the arbitration of differences between the company and the city, to the fares to be charged, to dividends on common stock, to accounting and computation of returns, to funds for capital expenditures, to the sale of securities, and to the operation of motor busses upon the streets of appellant city, in competition with the street railway company. We shall not undertake to determine what, if any, of these provisions are invalid. We have only to determine whether the ordinance is rendered invalid because of these provisions. Section 29 of Article 3 of the Constitution of this state provides that:

''Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.''

The question has apparently not been decided by this court;

but the holding is uniform in other jurisdictions that similar provisions in the Constitutions of other states are not applicable to city ordinances. *People v. Wagner*, 86 Mich. 594 (49 N. W. 609) ; *Salt Lake City v. Howe*, 37 Utah 170 (106 Pac. 705) ; *Ex parte Haskell*, 112 Cal. 412 (44 Pac. 725) ; 2 McQuillin on Municipal Corporations, Section 681. Even if we do not apply the liberal rule of the Constitution to city ordinances, it is practically universally held that the titles affixed to statutes or ordinances must be given a reasonable and liberal construction (*State v. Cantieny*, 34 Minn. 1 [24 N. W. 458] ; *Richards v. Town of Magnolia*, 100 Miss. 249 [56 So. 386] ; *Bartlesville E. L. & P. Co. v. Interurban R. Co.*, 26 Okla. 453 [109 Pac. 228]), and that the title need not minutely and specifically express every related matter included in the act, it being sufficient if all of the provisions thereof are, in fact, related or germane to the subject of the ordinance. *Dempsey v. City of Burlington*, 66 Iowa 687 ; *Hanson v. Hunter*, 86 Iowa 722 ; *Trout v. Minneapolis & St. L. R. Co.*, 148 Iowa 135 ; *State v. Nebraska Tel. Co.*, 127 Iowa 194 ; *Perkins v Board of County Com.*, 271 Ill. 449 (111 N. E. 580) ; *Moore-Mansfield Const. Co. v. Indianapolis, N. C. & T. R. Co.*, 179 Ind. 356 (101 N. E. 296) ; *State v. McKinney*, 29 Mont. 375 (74 Pac. 1095) ; *Montclair v. Ramsdell*, 107 U. S. 147 (27 L. Ed. 431) ; *State v. Connelly*, 66 N. J. L. 197 (48 Atl. 955) ; *Worthington v. District Court*, 37 Nev. 212 (142 Pac. 230) ; *Vernor v. Secretary of State*, 179 Mich. 157 (146 N. W. 338).

In the light of the foregoing rules, and keeping in mind the reason for limiting the title of ordinances to one subject and requiring that same be clearly expressed therein, is it necessary to declare Ordinance No. 3147 invalid because of a defective title? We do not think so. We have quoted the title in full, and have carefully examined all of the provisions of the ordinance. The title is full and comprehensive, and, in so far as the various provisions of the ordinance relate or are germane to the subject and the purpose thereof, they are certainly valid. There is, perhaps, no precise test for determining in every instance whether a given provision is germane or not. Reasonable and liberal rules of interpretation must be adopted and followed. Many matters more or less remote are mentioned in the

ordinance; but, when it is considered as a whole, they appear to be germane to the subject and general purpose thereof. The title is not deceptive or misleading, and it seems to us to meet the requirements of the statute. We do not find two or more subjects expressed in the title, and, as the provisions of the ordinance proper are germane to the subject expressed therein, we cannot hold the ordinance invalid.

IV. One of the matters largely relied upon in the court below and urged upon us with considerable vigor by appellee is that the final enactment and adoption of the ordinance should have been preceded by the publication of the notices specified in Section 955 of the Code and Section 1056-a37 of the Code Supplement, 1913. The procedure and notice required to be published by Sections 1056-a30, Code Supplement, 1913, and 776 of the Code, were fully complied with.

5. MUNICIPAL CORPORATIONS: ordinances: notice *in re* franchise.

Section 1056-a30 may, for convenience, be divided into two parts: First, that which prescribes the procedure for the enactment and adoption of a franchise ordinance, which, so far as material, is as follows:

"Every ordinance or resolution appropriating money or ordering any street improvement or sewer, or making or authorizing the making of any contract, or granting any franchise or right to occupy or use the streets, highways, bridges or public places in the city for any purpose, shall be complete in the form in which it is finally passed, and remain on file with the city clerk for public inspection at least one week before the final passage or adoption thereof. * * *"

The second part is that which requires the submission of the proposition to a vote of the electors and prescribes the notice to be given, and is as follows:

"* * * No franchise or right to occupy or use the streets, highways, bridges or public places in any such city shall be granted, renewed or extended, except by ordinance, and every franchise or grant for interurban or street railways, gas or waterworks, electric light or power plants, heating plants, telegraph or telephone systems, or other public service utilities within said city, must be authorized or approved by a majority of

the electors voting thereon at a general or special election as provided in Section 776 of the Code.''

That is to say, the ordinance, complete in the form in which it was finally adopted, remained on file in the office of the city clerk for at least one week after its first and second readings, before it was finally voted by the council, and a notice of the election was published once each week for four consecutive weeks in the Daily Capital and the Evening Tribune, two daily newspapers published in the city of Des Moines. The notices which it is contended by appellee should have been published before the final passage of Ordinance No. 3147 are the notices specified in Section 955 of the Code and Section 1056-a37 of the Code Supplement, 1913. These sections, so far as material, are as follows:

''Section 955. * * * But no exclusive franchise shall be thus granted, extended or renewed, and no franchise shall be granted or authorized, until after notice of the application therefor has been published once each week for four consecutive weeks in some newspaper published in such city.''

''Section 1056-a37. * * * Whenever any ordinance or proposition is required by this act to be submitted to the voters of the city at any election, the city clerk shall cause such ordinance or proposition to be published once in each of the daily newspapers published in said city, such publication to be not more than twenty or less than five days before the submission of such proposition or ordinance to be voted on.''

Section 955 is found in the chapter relating to cities under special charter, but Section 1056-a19 of the Code Supplement, 1913, makes all laws relating to cities and incorporated towns and cities under special charter, so far as not inconsistent with the provisions of Chapter 14-C, Title V, applicable to cities having the commission form of government. This section, so far as material, is as follows:

''Section 1056-a19. All laws governing cities of the first and second class and not inconsistent with the provisions of this act, and Sections 955, 956, 959, 964, 989, 1000, 1023, and 1053 of the Code, Chapter 60 of the Laws of the Thirty-third General Assembly and acts amendatory thereof now applicable to special charter cities and not inconsistent with the provisions of this

act, shall apply to and govern cities organized under this act.
* * *''

The question for decision, therefore, is: Was compliance with Sections 1056-a30 and 776 all that the statute requires, or must the final adoption of the ordinance be preceded by the publication of the notices prescribed by Section 955 of the Code and Section 1056-a37 of the Supplement? Perhaps it will be helpful to recall in this connection that municipalities, under Title V of the Code, relating to the incorporation and government of cities and towns, are divided into four classes, as follows: (1) Cities and towns; (2) cities under special charter; (3) cities under the commission form of government; and (4) cities and incorporated towns under a council and manager.

Section 955 is made applicable to cities having the commission form of government, by adoption, and only so far as it is not inconsistent with the provisions of Chapter 14-C, Title V. It would have been difficult for the legislature to have more clearly and definitely prescribed the procedure to be followed in granting a franchise than it has done in Sections 1056-a30 and 776. Every step in the proceedings, from the first consideration by the council of the ordinance to the completed publication of the notice of the election, is found in these two sections of the statute. The ordinance must remain on file in the office of the clerk in its completed form for public inspection for at least one week before it is finally passed by the council. When this has been accomplished, a notice of the election must be published in two newspapers, if that number are published in the city, once each week for four consecutive weeks. The procedure thus outlined being comprehensive and complete, the requirements of Section 955 can have no application thereto. Where the legislature has prescribed a definite procedure, and that is followed, all legal requirements have been observed. Furthermore, the provisions of Section 955 are inconsistent with the procedure prescribed by Section 1056-a30. The word "inconsistent," as used in Section 1056-a19, does not necessarily have the same meaning and import as are given
6. WORDS AND PHRASES: "inconsistent." thereto when applied to conflicting statutes relating to the same subject. It does not necessarily refer to repugnant and irreconcilable

statutes. Adopting statutes, such as Section 1056-a19, which, as in this case, refer to and adopt the whole body of the law relating to and governing cities and incorporated towns, are doubtless enacted out of an abundance of caution, to prevent the possible omission of essential statutory requirements. The specific mention of Sections 955 and 956 in Section 1056-a30 is without any particular significance. This is illustrated by the fact that, notwithstanding the fact that the provision of Section 956 as to notice is identical with the provisions of Section 776, both of which are made applicable, so far as not inconsistent, to cities having the commission form of government, the legislature deemed it important, when enacting Section 1056-a30, to provide specifically for the publication of the notice required by Section 776.. The evident purpose of the legislature was to make definite and certain the procedure, so that nothing should be left to implication. It is our conclusion that publication of the notice prescribed by Section 955 was not necessary.

As to the notice specified in Section 1056-a37, we need say little. This question was before us in *Des Moines City R. Co. v. Susong,* 168 Iowa 128. In that case, we held that the provisions of this section are not applicable to the enactment of franchise ordinances such as are contemplated by Section 1056-a30 of the Supplement. The question was not there gone into extensively, and it may not be out of place to enlarge briefly upon what was there said.

The subject-matter of Section 1056-a37 is closely related to that of Section 1056-b23, Supplemental Supplement, 1915. These sections provide for a sort of initiative and referendum. The former provides a method by which a proposed ordinance may, upon petition of a certain percentage of the qualified electors residing within a city having the commission form of government, be submitted to a vote thereof, and Section 1056-b23 provides a method by which certain ordinances passed by the city council of a city or incorporated town under Chapter 14-D of the Supplemental Supplement, relating to the government of cities and incorporated towns by a council and manager, may be suspended for a time, and, upon petition of a certain percentage of the electors, shall not go into effect until submitted to a vote thereon. The provisions of this section are similar to

the provisions of Section 1056-a38, Code Supplement, 1913. In proceedings under Section 1056-b23, notice shall be published as prescribed by Section 1056-a37 and Section 776 of the Code. The subject-matter of Section 1056-a37 is not related to the subject-matter of Section 1056-a30, and the procedure there outlined and the purpose thereof are distinct and independent.

Counsel for appellee have not contended in argument that the ordinance in question grants an exclusive franchise. We shall not, therefore, discuss this matter. We are satisfied that the ordinance does not grant an exclusive franchise.

What is said above disposes of all the principal contentions of counsel for appellee, and we see no occasion for further discussion thereof. We reach the conclusion that the judgment of the court should be reversed. It is so ordered.—*Reversed.*

All the justices concur.