# Norris, Mayor, et al. v. Kentucky State Telephone Company.

(Decided June 10, 1930.)

M. J. HENNESSEY for appellants.

M. HARGETT for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Bracken County Telephone Company obtained franchises from the fiscal court of the county and from certain municipalities in the county, including the city of Augusta, authorizing it to erect, maintain, and operate a telephone system for a period of 20 years. Upon the expiration of the franchises in the year 1923 it obtained new franchises from the fiscal court of Bracken county and all the municipalities except the city of Augusta. Though repeatedly requested to offer a new franchise, the city council of the city of Augusta refused to take action until November 8, 1926, when the necessary resolution was passed. In the resolution the city reserved the right to reject any and all bids, and the further right to fix and regulate any and all rates. The only bidder was the Bracken County Telephone Company, which agreed to pay for the franchise $25, and the cost of advertising, and to supply service to the subscribers at the rates then existing. The city council took no action until April 8, 1927, when it rejected the bid. In the meantime a new company known as the Northern Kentucky Mutual Telephone Company was organized and obtained a franchise from the fiscal court and from the city of Augusta. On August 16, 1928, the city council passed an ordinance making it unlawful for any person, association, partnership, company, or corporation to maintain or operate, in any of the public streets, alleys, or public places in the city of Augusta, any poles, wires, or equipment of any kind for the purpose of operating a telephone system or electric light and power system, without first obtaining from the city a franchise so to do. In the meantime the Bracken County Telephone Company sold its property rights and franchises to the Kentucky State Telephone Company. After the enactment of the foregoing ordinance several penal actions were filed against the Ken-

tucky State Telephone Company. Thereupon this action was brought by the Kentucky State Telephone Company against the mayor and members of the city council and the city of Augusta to enjoin interference with its poles and wires, and the enforcement of the penal ordinance, and to compel the defendants to accept its predecessor's bid for the franchise and to grant the franchise. The case was submitted on the pleadings, and the relief prayed for was granted. The defendants appeal.

Section 164 of the Constitution is as follows: "No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway." Though in construing this section of the Constitution we have held that in granting franchises for the public benefit a city council acts in a legislative capacity, and its discretion cannot be taken away by the courts, we have also held that, inasmuch as the members of the city council act as trustees for the public to the end that the latter may obtain such conveniences as telephones, electric lights, and the like, they may not, after the sale of a franchise, arbitrarily or corruptly reject all bids and thereby escape the obligation to award the franchise to the highest and best bidder. Groover v. City of Irvine, 222 Ky. 366, 300 S. W. 904. With respect to a company operating under a prior franchise, the case is made all the stronger by section 2741m-1, Kentucky Statutes, which applies to cities of the fifth class. and reads as follows:

"That at least eighteen months before the expiration of any franchise, acquired under, or prior to, the present Constitution, it shall be the duty of the proper legislative body or boards of all cities and towns of this Commonwealth, except cities of the first class, to provide for the sale of a similar franchise to the highest and best bidder on terms and conditions which shall be fair and reasonable to the public, to the corporation, and to the patrons of the

corporation, and which shall specify the quality of service to be rendered.

"Provided: that if there is no public necessity for the kind of public utility in question and if the municipality shall desire to discontinue entirely the kind of service in question, then this section shall not apply."

This statute, though mandatory in its other provisions, is merely directory as to time. It was enacted, not only for the benefit of the city, but for the benefit of the owner of the expiring franchise, and to prevent his arbitrary exclusion from the city. Gathright v. Byllesby, 154 Ky. 106, 157 S. W. 45; City of Louisville v. Louisville Home Telephone Co. (C. C. A.) 279 F. 949. It is apparent, therefore, that, when the statute and the controlling provision of the Constitution are considered together, there is no room for arbitrary or corrupt action on the part of the city council. Therefore the only question to be decided is whether the undenied allegations of the petition as amended disclose a case of arbitrary action on the part of the mayor and city council of the city. The facts alleged are these: On the expiration of its franchise in 1923 the Bracken County Telephone Company requested the city council of Augusta to offer a franchise for sale, but without success. Subsequently its efforts were renewed, but no action was taken by the city council. Finally a franchise was offered for sale on November 8, 1926, and the Bracken County Telephone Company was the only bidder. The company by its agents and attorneys sought to have the bid accepted, but was unable to get the city council to take any action until April 8, 1927, when its bid was arbitrarily rejected. In about 1926, J. C. Norris, then mayor of the city, C. L. Hook and C. G. Steen, members of the city council, Barrett Waters, C. R. Bradley, and other citizens of Augusta, became interested in the organization of the Northern Kentucky Mutual Telephone Company, which was organized as a rival and competitor in business to the Bracken County Telephone Company. In this connection it is averred "and plaintiff says that at all times since the organization of the Northern Kentucky Mutual Telephone Company in 1926 said Northern Kentucky Mutual Telephone Company has been able to secure from the city council of the City of Augusta all and any resolutions, ordinances, franchises and favors that would promote its interests as a rival

and competitor in business of the Bracken County Telephone Company; and has at all times been able to defeat any and all just and reasonable legislation asked by, or for, or on behalf of the said Bracken County Telephone Company, and plaintiff says that the said Northern Kentucky Mutual Telephone Company, by its officers and agents, appeared before the City Council of the City of Augusta, Kentucky, on April 8, 1927, and unlawfully opposed the acceptance of the bid for the franchise made by the Bracken County Telephone Company and it says that by reason of the unlawful opposition of said Northern Kentucky Mutual Telephone Company, its officers, agents and attorneys, and by reason of the direct interest of J. C. Norris, Mayor of the City of Augusta, Councilman C. L. Hook, Councilman C. G. Steen and other members of the City Council and by reason of the active opposition of said Mayor, said Councilmen, the promoters, officers, agents and attorneys of the said Northern Kentucky Mutual Telephone Company, to the Bracken County Telephone Company its bid for said franchise was finally arbitrarily refused by said City Council and on account of said unlawful opposition neither said Bracken County Telephone Company nor this plaintiff, who is its successor, has been able to obtain a franchise on any terms from the City Council of the City of Augusta authorizing it to continue its business in said city.''

The penal ordinance was enacted at the request and solicitation of the Northern Kentucky Mutual Telephone Company, its officers, agents, and attorneys. That company has no long-distance service and no connection with the county seat or with any person living within the corporate limits of the city of Brooksville. The Bracken County Telephone Company has a complete system all over the county, and a long-distance service which connects it with other telephone companies, and affords its patrons communication with all parts of the United States. Its exchanges, appliances, and equipment are all modern type and kept in first-class condition. In September, 1928, the Bracken County Telephone Company appeared before the city council with a petition in writing signed by 150 citizens and representative business enterprises in the city, all of whom were interested in long-distance telephone service, requesting the city council to repeal the penal ordinance and to offer for sale a franchise that would enable the company to continue busi-

ness. At that time C. R. Bradley, president of the Northern Kentucky Mutual Telephone Company, entered a protest on behalf of his company and insisted on the enforcement of the ordinance. He there stated to the city council that, in the event that the enforcement of the ordinance or the ousting of the Bracken County Telephone Company from the city of Augusta terminated in any litigation involving said council, all expenses of such litigation would be borne by the Northern Kentucky Mutual Telephone Company. The city council then and there arbitrarily refused to grant said petition or to repeal or modify said ordinance, or to offer any franchise for sale. The appellee company now has property consisting of equipment, poles, lines, exchanges within the corporate limits of the city of Augusta of the value of $25,000, and 135 patrons are using its phones. While there was a denial of other averments not above set out, and a denial that the action of the council was arbitrary, there was no denial of the above facts. It is not pretended that the bid of $25 and the cost of advertising was smaller than the usual bid made for a like franchise in a small town. It cannot be contended that the council was influenced by the excessive rates fixed in the bid because the right to regulate rates was specifically reserved. On the contrary, the case is one where the owner of the expiring franchise endeavored in every way to get the council to act and offer a new franchise for sale. It refused for a period of three years to take any action. It then offered a franchise for sale. It then delayed action on the bid for a period of six months. When it did act the mayor of the city and some of the members of the council were interested in a rival telephone company, which opposed the acceptance of the bid, and by reason of their active opposition the bid was rejected. This action was followed by the penal ordinance which was enacted at the request and solicitation of the Northern Kentucky Mutual Telephone Company, its officers, agents, and attorneys. When an attempt was made to have the penal ordinance repealed and to have the council grant a franchise, the president of the Northern Kentucky Mutual Telephone Company protested, stating that his company would bear the expense of any resulting litigation. In view of all these circumstances, we are constrained to the view that the action of the city council in rejecting the bid was arbitrary, and that the court did not err in directing its acceptance. We also conclude that

the penal ordinance enacted as a part of the plan to exclude appellee from the streets of the city is invalid so far as appellee is concerned, and that the court did not err in enjoining its enforcement.

Judgment affirmed.