## Hatcher et al. v. Kentucky & West Virginia Power Co., Inc., et al.

Nov. 21, 1939.

A. S. Ratliff for appellants.

Harman, Francis & Hobson and Henry J. Scott for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was instituted by the appellants, James Hatcher and other named citizens and taxpayers of the city of Pikeville, against the appellees, Kentucky & West Virginia Power Company, Incorporated, and the city of Pikeville, attacking the validity and seeking the cancellation of the electric light and power franchise granted the power company in April, 1934, as the highest and best bidder therefor in the sum of $4,600.

The complained of proceedings of the city council, leading up to the sale of the light and power franchise in question, are, as disclosed by the record, as follows:

On April 3, 1934, the council of the city of Pikeville passed a resolution directing the sale of a new electric light and power franchise in the city and providing for its sale at a public bidding. The city clerk was further directed, before making said sale, to advertise it by printed or public notices for not less than fifteen days next preceding the sale and in two issues of the Pike County News next before the date of sale. Further, an ordinance was introduced, entitled, "an ordinance granting the right, privilege, franchise and authority to construct, maintain and operate in, above, under, across and along the streets, thoroughfares * * * of the City of Pikeville lines for the distribution of electric energy" and asked that said ordinance be read and laid over, which was done in open council without any action then had on same.

Pursuant to the direction of the resolution, a copy of the ordinance or resolution proposing said franchise sale was posted on April 5, 1934, and a sale made thereof on April 20, 1934, when the clerk, as also directed, made a report of his actions in respect to the sale of the franchise to the mayor and city council, advising that he, as directed in the resolution of the council, after duly advertising the proposed sale by notices published in three consecutive issues of the Pike County News, namely, April 5th, 12th and 19th, and posted at five conspicuous places about the town of Pikeville, did on April 20th, at the front door of the town hall, offer for sale a fran-

chise for the use of the public streets for the distribution of light and power to the inhabitants and consumers of the city of Pikeville, as set out in the resolution; that thereupon the Kentucky & West Virginia Power Company, Incorporated, by R. A. Hodges, its district manager, presented a certificate from the city treasurer evidencing Hodges' deposit with him of the sum of $2,500, as a condition of his bidding at the sale and that thereupon the said power company, by the said Hodges, and also one Sidney Trivette, proceeded to bid at said sale; that Sidney Trivette having bid the sum of $4,700 for the franchise, he was declared by the clerk to be the highest bidder and was asked for payment of said sum, but that he has not tendered same to date; that appellee, the said power company, bid the sum of $4,600 and delivered to the clerk a cashier's check on the Pikeville National Bank, in the amount of its bid. To the report, he also attached and made a part of it a copy of the notice of the sale, the written bid of the power company, the certificate of the city treasurer referred to and the cashier's check for $4,600.

Thereupon, the city council met and rejected Trivette's bid of $4,700 and accepted that of the power company of $4,600 and on May 1st passed an ordinance accepting same and approving said sale and entered into a contract with the power company, granting it the right and privilege to use its streets, etc., as therein provided and conveyed by the sale of said franchise.

Thereupon, this suit was filed by the appellants, citizens and taxpayers of the city of Pikeville, against the city and the power company, grantee of the franchise, wherein they set out several reasons which they claimed rendered the ordinance and sale of the franchise thereunder irregular and void, among which were: (1) that the sale was made arbitrarily by four members of the council, without consulting with the mayor or city attorney; (2) that the sale was prematurely had; (3) that the bid of the highest bidder was summarily and arbitrarily rejected, without consideration by the council; and (4) that the said sale to the power company was void, for the reason that it was the owner at that time of an existing, similar franchise, which did not expire for more than four years thereafter.

Issues were joined by responsive pleadings filed and voluminous proof was taken. The case being submitted

thereon, the court adjudged that plaintiffs had not shown themselves entitled by the pleadings and proof to the relief sought, and further held that the attacked franchise, so granted by the city, was a valid and subsisting franchise and that the city council did not exceed its powers in granting same, upon the ground, mainly and most insistently argued, that the Kentucky & West Virginia Power Company, Incorporated, was on May 1, 1934, the owner of a similar franchise which did not expire until February, 1939, and adjudged that plaintiffs' petition be dismissed. To such ruling, the plaintiffs objected and excepted and prayed an appeal, which was granted and is now before us.

We deem it unnecessary to more than cursorily mention the first three of the four grounds argued and relied upon for reversal of the judgment, both because they appear practically abandoned by the appellants and further because it is our conclusion that the same are clearly without merit.

However, as to the first of these objections, it is made clear by the record that the sale of the franchise by the four members of the city council was not made arbitrarily, in that the ordinance directing the sale of the franchise was not passed until after repeated public discussions as to its merit, the rates proposed under it and the desirability of its sale from the standpoint of the public interest, by reason of which it can not be inferred that both the mayor and the city attorney were not made fully conversant with the question as to the desirability of its sale, both the mayor and the city attorney having, throughout these discussions, criticised the proposed ordinance and sale of the franchise and engaged in protracted debate upon the moot question of its advantages and desirability for the city.

As to the second of the objections, that the franchise was not properly advertised: By the ordinance it was directed that before making sale of the franchise, it should be duly advertised for a period of fifteen days. From the record it appears that it was accordingly advertised in three successive issues of the county paper, on the 5th, 12th and 19th of April, and that the franchise was sold on the 20th. Clearly this was in accord with the direction of the ordinance, that its sale be advertised for fifteen days, the rule being that in computing the time, one of the terminal days is included and the other

excluded. When applying this rule, is is shown that the sale of the franchise was advertised for fifteen days.

As to the next objection, that the bid. of the highest bidder was summarily and arbitrarily rejected, it is shown that this too is without support, when considered in connection with the facts and circumstances. known to the council at the time of rejecting the bid of Mr. Trivette, in the highest amount bid therefor, of $4,700 and accepting the power company's bid of $4,600. The record shows that the council felt that at the sale there was but one responsible bidder for the franchise, which was the power company, which deposited a check of $2,500 with the city treasurer, as complying with the condition named for bidding on the franchise, and also tendered the clerk, with its bid, a cashier's check for the amount of its bid, whereas the record shows that Mr. Trivette was a young lawyer, without experience in the matter of producing and furnishing electric energy and was without the means of installing a plant and furnishing the city therewith were his bid accepted and that he was at the time insolvent and for such reasons it concluded that his bid was not made in good faith and was not to be accepted as the "highest and best bid" within the meaning of that phrase as used in Section 164 of the Constitution.

As said in the case of Groover v. City of Irvine et al., 222 Ky. 366, 300 S. W. 904, 905:

"It will be observed that the foregoing Section [164 of the Constitution], after making it the duty of the municipality before granting a franchise or privilege for a term of years to receive public bids therefor after due advertisement, adds the following:

" 'And award the same to the highest and best bidder; but it shall have the right to reject any or all bids.'

"In Keith v. Johnson et al., 109 Ky. 421, 59 S. W. 487, 22 Ky. Law Rep. 947, we held that, where the municipality awards a franchise, it must award it to the highest and best bidder, but that case did not deal with the right of the municipality to reject all bids. Here there is presented for the first time the question whether the discretion vested in the board of council of the municipality is subject to

the control of the courts in the circumstances presented. In granting franchises for the public benefit, a city council acts in a legislative capacity. In the exercise of this power a discretion is vested, which cannot be taken away by the courts. Inasmuch, however, as the members of the city council act as trustees for the public to the end that the latter may obtain such conveniences as telephones, electric lights, and the like, they may not, after the sale of a franchise, arbitrarily or corruptly reject all bids and thereby escape the obligation to award the franchise to the highest and best bidder. However, when the exercise of the power and discretion to reject bids is attacked in the courts, the presumption will be indulged that the council has not abused its discretion, but has acted with reason and in good faith for the benefit of the public. To proceed upon any other theory would be to substitute the judgment and discretion of the courts for the judgment of the members of the council with whom the lawmakers have seen fit to lodge the power. Little Rock Railway & Electric Company v. Dowell, 101 Ark. 223, 142 S. W. 165, Ann. Cas. 1913D, 1086. Hence it is incumbent on one who calls in question the discretion of the council to allege and prove facts showing that the council acted arbitrarily or corruptly, and was therefore guilty of a clear and palpable abuse of discretion.''

There is nothing in the record tending to show an abuse of the discretion vested in the council, or that it acted arbitrarily or corruptly in rejecting the bid of Mr. Trivette and accepting that of the power company, nor are the appellants in position to here contend that Mr. Trivette's legal rights were not respected by the council when rejecting his bid, in that, even were such the case, he would be the one thereby adversely affected and the one to present a grievance claim, which he is not here found doing, in that no complaint is made by him of the council's action in rejecting his bid, nor is he even made a party to the suit.

Now turning our attention to the fourth or last of the objections urged, which was in the lower court and is here made the main ground upon which appellants rest their alleged right to a reversal of the judgment, that the appellee city's sale to the power company of a twenty year light and power franchise was void, for the

reason that the power company was at that time the owner of a similar existing twenty year franchise, which did not expire until more than four years thereafter.

In support of their contention, they cite and rely upon the rule announced in the case of Stites v. Norton, etc., 125 Ky. 672, 101 S. W. 1189, 31 Ky. Law Rep. 263, 13 L. R. A., N. S., 474, but the question there decided we do not conceive is presented in the instant case.

Counsel for appellants in the lower court more aptly rested their contention that the council was here without power or authority to grant a franchise to the power company in April 1934, because it was the owner of a similar franchise which did not expire until February, 1939, upon the ruling announced in the case of City of Princeton v. Princeton E. L. & P. Company, 166 Ky. 730, 179 S. W. 1074, 1077, because there, as here, the said power company was the owner of a franchise expiring some years after the granting of the new franchise. There the court, in considering such company's right to acquire a franchise when then owning a similar one that had some years to run, said:

"The bid was received for the sale of the franchise from January 1, 1917, until January 1, 1927, on the 3d day of June, 1912. This was a period of $4\frac{1}{2}$ years before the franchise can be enjoyed. If the grant is valid, it ties the hands of the city for over 15 years. If it is within the power of the city council to create and grant a franchise which is not to be exercised for $4\frac{1}{2}$ years, it is within its power to grant one for 5 or a less number of years, and postpone the time of its exercise to 15 or a greater number of years, so as not to carry the exercise of it beyond 20 years. This court has held that, if the termination of the period for which a franchise is granted is more than 20 years after the granting of the franchise, it is beyond the power of the council to grant it. If the franchise granted * * * in 1906, and the period of its exercise commencing as it did on January 1, 1907, had been for 20 years, as contended by appellee, instead of 10, the attempt to grant it would have been void, because the period of its termination would have been more than 20 years after its granting. City of Somerset v. Smith, 105 Ky. 678, 49 S. W. 456, 20 Ky. Law Rep. 1488; Hilliard v. Fetter Lighting & Heating Company, 127 Ky. 95, 105 S. W. 115, 31 Ky. Law Rep. 1330.

"Putting aside any objection to the franchise attempted to be granted in 1912, on account of the want of power in the municipal council to create or grant such a franchise, and passing over the effect of the ordinance purporting to revoke the ordinance granting the franchise, the question is presented as to whether or not a municipal council of a city of the fourth class can grant a valid franchise to a public service corporation, for the use of its streets and public ways for its apparatus, for the period of 10 years, the time of its exercise to commence at the termination of 4½ years after the granting of it? * * * To grant franchises for the production of light and power, not to be exercised until an unreasonable distance of time has expired, will oftentimes have the effect of denying to the people of municipalities the opportunity of enjoying the best, latest, and cheapest creations of genius until the period of the franchise and its postponement has expired. The policy of our legislation has been to attempt to so regulate the granting of franchises that the benefits of their exercise may be shared by the public, and to prevent them being granted primarily for the benefit of the grantees."

So viewing the question presented, that the granting there of a franchise to furnish light to the city for a period of ten years, which was not to go into effect for four and a half years, the court adjudged that the unreasonable length of time between its granting and its going into effect was injurious to the public interest and held that the franchise so granted was void.

The question presented in the Princeton case, though more analogous than that raised in the Stites case, supra, was yet not the question with which we are here confronted, for the reason that the twenty year light and power franchise here sold to the power company on May 1, 1934, was, as provided by the very terms of the ordinance, to continue in force for a period of twenty years from *the date of the passage of the ordinance granting it* and the beginning of its operation thereunder was not deferred to some future date as in the Princeton case.

The trial court, being of the opinion that the Princeton case did not apply, decided the question adversely to plaintiffs' contention rested thereon and held that the

rules announced in the case of Kentucky Utilities Company v. Board of Commissioners of the City of Paris, 254 Ky. 527, 71 S. W. (2d) 1024, and the cases therein cited were here controlling and required his holding that the council of the city of Pikeville did not exceed its powers in granting the franchise here involved and attacked and that the sale was valid, even though the franchise was granted to the power company at a time when it owned a similar franchise which did not expire until four years thereafter.

Our consideration of the Paris case and the principles therein declared lead us to conclude that the learned trial court did properly interpret the legal principles and rules announced in that case and correctly applied them in his decision of the question here presented.

It is perhaps well, in our consideration of the question here presented, of the city's right, under the circumstances here found and by the procedure employed, to make a public sale to the highest and best bidder of a similar franchise to that then being operated by its purchaser and at a time some four or five years before its expiration, to consider just what the franchise is that is the subject of sale as required by the Constitution.

As said in Bland v. Cumberland Telephone & Telegraph Company, 109 S. W. 1180, 1181, 33 Ky. Law Rep. 399:

"It [a franchise] is not, as sometimes seems to be thought, the right to operate a telephone exchange in a city. That right is not one to be granted or denied by the municipality any more than it could grant or refuse a franchise to conduct a dry goods store within the city. The franchise under discussion is *the permission to do something which the city has the right of control over*—that is, the occupancy of some part of the public streets." (Italics ours.)

In Cumberland Telephone & Telegraph Company v. City of Calhoun, 151 Ky. 241, 151 S. W. 659, 661, in discussing the right of the company to use the streets of the city in conducting its 'phone business, it is said:

"Section 163 of the Constitution provides in part: 'No telephone company within a city or town shall be permitted or authorized   *   *   *   to erect its poles, posts, or other apparatus along, over,

under or across the streets, alleys or public grounds of the city or town without the consent of the proper legislative bodies or boards of such city or town being first obtained.' And to obtain this right a franchise must be secured as provided in Section 164.

"As said in Rural Home Telephone Company v. Kentucky & Indiana Telephone Company, 128 Ky. 209, 107 S. W. 787, 32 Ky. Law Rep. 1068: 'These sections of the Constitution must be read together, as the right to occupy the streets and public ways conferred by Section 163 can only be granted in the manner provided in Section 164.' "

Further Section 164 of the Constitution has been by this court repeatedly construed, as in the Princeton case, supra, as having for its purpose the protection of municipalities against the loss of valuable rights in the granting of franchises and privileges and, by the sale of the franchise after due advertisement to the highest and best bidder, to protect the rights of the citizens to receive the value of the privilege to be granted away and prevent their councils from granting valuable privileges to favorites without any sufficient consideration.

Further it is said in the Paris case, supra, that the defining and granting of a franchise is the exercise of a legislative function of the sovereignty and that the power to grant franchises as an original proposition inheres in the sovereignty of the state which may by constitutional or statutory provisions delegate that right to a local political subdivision such as a municipality. Irvine Toll Bridge Company v. Estill County, 210 Ky. 170, 275 S. W. 634, 636. McQuillin's Municipal Corporations, 2d Ed., Section 1728.

As said in the Paris case, supra [254 Ky. 527, 71 S. W. (2d) 1027]:

"The granting of a franchise such as the one here in question being an exercise of sovereignty which, as an original proposition, rests with the legislative body of the people, the Legislature, our problem in the instant case is to determine how far the people by their Constitution have stripped from their Legislature such power and given it to local bodies, here, the municipalities. It is quite clear that the framers of the Constitution meant to vest

the municipality with the right and power to control the original occupation of its public ways and streets by the utilities mentioned in this Section 163 of the Constitution. A reading of the debates of the Constitutional Convention bearing upon this Section 163 of the Constitution will disclose that the main and actuating purpose of the framers of that instrument was to prevent the Legislature from authorizing the indiscriminate use of the streets of the city by public utilities without the city being able to control the decision as to what streets and what public ways were to be occupied by such utilities. There is no language, however, in either Section 163 or Section 164 of the Constitution that takes away from the Legislature the right and power to require a municipality once it has granted a franchise to a public utility to give that utility, after it has established its plant and occupied the public ways and streets of the municipality, the opportunity on the expiration of its franchise of procuring a new one, on terms fair to the city, the utility, and to the public, by a bid which is highest and best in open competition. * * * The framers of our Constitution were able men. They knew that, if a public utility once established could have no opportunity of continuing its business on the expiration of its franchise, not even if it were the highest and best bidder in open competition for a new franchise, fair to the city, the utility, and to the public, it would be compelled as a sheer matter of business and finance to amortize its plant within the period of its existent franchise, which cannot exceed the period of twenty years and that to do so would necessitate such rates to the public as would make the cost of the service rendered extremely burdensome, and indeed in some instances almost prohibitive. * * * Therefore, the framers of our Constitution put on obstacle in the way of the Legislature requiring a city once it had granted a franchise to give the franchise holder an opportunity to get a new and similar one on its expiration on the terms and under the conditions the Legislature has set out in the 1904 and 1926 acts. * * *

"To summarize, the act of 1926 does not compel the granting of the franchise mentioned in the act to the old franchise holder except in the event such

franchise holder is the highest and best bidder at the sale. If it is, Section 163 of the Constitution does not stand in the way of the Legislature requiring the city to accept such bid. * * * Neither the 1904 nor the 1926 act works a perpetuity of a franchise once granted. Neither act requires the old franchise to be relet. It is a new franchise which is called into being. The city may prescribe a character of service, rates, etc., in the new franchise as it deems proper, the only restriction being that the new franchise must be fair to the city, public and the utility, which simply means that the city shall not be arbitrary, and, as to this, the city cannot complain. Nor does the prohibition against arbitrary action of itself work a perpetuity. The statutes do not require the granting of a new franchise to the old franchise holder unless it be the highest and best bidder at the sale. * * *

"We therefore conclude that the acts of 1904 and 1926 [Section 2741m-1] violate neither Section 163 nor Section 164 of the Constitution."

From this it is apparent that the public policy of the state no longer prohibits a municipality from granting a public service franchise, in harmony with the requirements of these constitutional provisions, before the expiration of a similar franchise then in operation, but expressly enjoins that at least eighteen months before the expiration of any franchise, it shall be the duty of the legislative body of the municipality, except cities of the first class, to provide for the sale of a similar franchise to the highest and best bidder on terms and conditions which are fair to all parties.

Further, in Norris v. Kentucky State Tel. Co., 235 Ky. 234, 30 S. W. (2d) 960, 962, the court said, in there granting the relief sought of compelling the city to grant the request of the telephone company that it offer a new franchise in accordance with the 1926 act, that "this statute, though mandatory in its other provisions, is merely directory as to time."

Such appearing now to be the law, that the city not only might, but must offer a new franchise before the expiration of an outstanding similar franchise, and that the requirement of the 1926 act as to when a new franchise is to be offered for sale is merely directory, in that it may be offered for sale either before, or at the

eighteen month period prescribed, we are led to conclude that the judgment of the trial court, in upholding the validity of the franchise sold the power company at public auction (even though sold it some four years before its similar franchise had expired) was within the authority and public policy declared by the act.

Judgment affirmed.