**COMMUNICATIONS SYSTEMS, INC.,**
Plaintiff–Appellant,

v.

**CITY OF DANVILLE, KENTUCKY; RV Cablevision, Inc.; George Cunningham; Mark Dexter; Roy Arnold and John Bowling, Defendants–Appellees.**

No. 88–6172.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1989.

Decided July 27, 1989.

Before GUY and RYAN, Circuit Judges, and DOWD, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Communications Systems, Inc. (CSI), appeals from a summary judgment ruling in favor of defendants, the city of Danville, Kentucky (the city); its mayor; members of its board of commissioners; and RV Cablevision, Inc. (RV). CSI claims that summary judgment was improper because numerous material issues of fact existed regarding the bidding and award procedures employed by the city and its officials in awarding a cable television franchise.[1] CSI also contends that the district court abused its discretion in refusing to allow CSI to file amended complaints raising additional allegations. Finding the district court's resolution of this dispute to be correct, we affirm.

## I.

In 1965, the city granted a twenty-year exclusive cable television franchise to Greg Cablevision, Inc. In 1982 or 1983, Irving Cablevision, a wholly-owned subsidiary of CSI, acquired the franchise and CSI operated it for the duration of Greg's term. In late 1982, the city began the process of soliciting competitive bids for a new franchise to commence when the "Greg" franchise expired. To that end, the city hired Charles Woodard, a cable consultant, to formulate a request for proposals (RFP), analyze all bids, make recommendations on the bids, and negotiate a final franchise contract. By January 1983, the RFP was complete and sent to potential bidders. The RFP specified desired features for the city's cable system. It also specified other items to be included in bid proposals, such as a statement of experience in the cable industry and a five-year projection of pro-

Edward H. Stopher argued, Raymond G. Smith, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., for plaintiff-appellant.

William H. Hollander, Sheryl G. Snyder argued, Merrill S. Schell, Mary Ann Main, Wyatt, Tarrant & Combs, Louisville, Ky., Edward D. Hays, Sheehan, Barnett & Hays, Danville, Ky., Michael E. Conover, Harrodsburg, Ky., for defendants-appellees.

---

* Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. CSI's appeal also challenged the district court's determination that the city is immune from CSI's antitrust claims. At oral argument, however, CSI conceded the city's immunity. *See* *Consolidated Television Cable Service, Inc. v. Frankfort*, 857 F.2d 354 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1537, 103 L.Ed.2d 842 (1989). At the time CSI's appeal was filed, the petition for certiorari in *Frankfort* was pending.

gram revenues and expenses. The RFP also indicated that, in accordance with requirements of Kentucky's constitution, the franchise would be awarded to the "highest and best bidder." The RFP explained that the city would consider a bidder's "financial capability, previous performance, etc.," in identifying the highest and best bidder. Significantly, the RFP also provided that the city reserved the right to reject any and all applications, to accept modifications of proposals, and to waive any irregularities. Five companies, including CSI and RV, submitted bids. On April 13, 1983, each bidder was sent a letter acknowledging their bid, invoking a no-contact policy between bidders and city commission members, and explaining the review process. In May 1983, CSI's attorney sought clarification of the "no-contact" policy and of procedures that would follow the consultant's evaluation of the bids. CSI's attorney also sought copies of the other bid proposals under the Freedom of Information Act. In response, the city attorney invited all five bidders to attend a June 3, 1983, public meeting at which each bidder could make an oral presentation regarding its bid. The bidders also were advised that they could make oral or written amendments to their previously submitted proposals. None of the bidders objected to these procedures. On May 18, 1983, the city publicly disclosed each of the bids. On May 19, 1983, Woodard submitted to the city and the bidders his first evaluation of the bids. He ranked CSI first and RV last overall.[2] Although neither CSI's nor RV's proposal complied with all RFP program specifications, RV's last place overall ranking was attributed to its failure to comply. Despite its last place overall ranking, RV shared top ranking in experience and finances. Following the June 3 public meeting, bidders were given a week to submit written amendments to their original bids. Both CSI and RV amended their original proposals. The amendments were forwarded to Woodard for further evaluation. His reconsidered evaluation ranked CSI first and RV second overall and noted that RV's bid still did not fully comply with all RFP specifications. The city commission held a meeting on July 5, 1983, during which it discussed the cable franchise matter with Woodard by phone. The following week, the city commission issued a resolution awarding the franchise to RV.[3] The resolution indicated that the award was based on Woodard's findings and evaluations, citizen comments, and the commission's emphasis on the more favorable revised rates offered by RV, in addition to RV's experience and favorable reputation in surrounding areas, financial conditions, and superior staffing. Disappointed by its failure to be awarded the franchise, CSI asked the commission to create a second overlapping cable franchise to be operated by CSI. The matter was considered at a public hearing in December 1983, during which presentations were made by CSI and RV representatives. The commission asked Woodard to evaluate CSI's proposal. He concluded that the proposed overlapping franchise would detrimentally impact publicly available cable services in Danville. Accordingly, in January 1984, the commission rejected CSI's proposal.

---

**2.** Woodard apparently placed greater emphasis on the technical aspects of the bids than on the rates or service the applicant could render to the city. His report states that:

> Each element of the construction and operations of the cable television system is of some importance, and, if Danville residents feel strongly enough about it, a failure or low grade in any one element could be sufficient to eliminate an applicant. Subject to that caveat, I consider the most important elements to be the technical proposals, mix of services offered, the ability to build and operate the system as promised (i.e. experience and financial situation), and, to a lesser extent, rates.

Notably, the city had a history of poor service with CSI as its cable operator. CSI's existing franchise expired on February 8, 1985. Nevertheless, CSI continued to operate in the city until March 4, 1985, when, on its own initiative, it ceased providing cable services and left the city without any cable service until RV's new system became operational.

**3.** One commissioner who supported the RV award did so with some reluctance, noting that RV had to be dragged "screaming into compliance" with RFP requirements. At the June 3 public meeting, RV representatives expressed eagerness to obtain the franchise, notwithstanding the company's former ambivalence toward the contract.

CSI subsequently filed suit in federal district court alleging that the individual defendants conspired with the city to award the franchise to RV, in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, and section 164 of Kentucky's constitution. Both parties filed for summary judgment and, in January 1985, relying on a state law claim of fraud, CSI sought a preliminary injunction to set aside the franchise award to RV, to compel the commission to award the franchise to CSI, or to compel the city to allow CSI to continue operating cable television service following the expiration of its franchise. CSI agreed to consolidate the hearing on its preliminary injunction claim with the trial on the merits of that claim, stating that a jury trial was unnecessary because there were no material disputes of fact. Following a hearing, the district court denied CSI's motion for a preliminary injunction and CSI appealed. We affirmed the district court's ruling in *Communications Systems, Inc. v. Danville,* 787 F.2d 589 (6th Cir.1986) (unpublished), finding no abuse of discretion in that court's determination that CSI failed to demonstrate a strong or substantial likelihood of success on the merits.

The case proceeded before the district judge who, in April 1987, granted motions for summary judgment filed by the city, its officials, and RV. The court simultaneously denied CSI's motion to file its first amended complaint, which alleged violations of the Kentucky Model Procurement Code, Ky.Rev.Stat.Ann. § 45A, *et seq.*, as adopted by city ordinance. The court's accompanying memorandum indicated that state action immunity barred CSI's antitrust claims. CSI then petitioned the court to reconsider, vacate, or alter and amend its judgment, claiming that the court did not address its state law fraud claims.[4] CSI also sought leave to file a second amended complaint alleging, for the first time, that the city violated its first amendment rights by refusing to allow CSI to operate a competing cable television system. The district court subsequently en-

tered a supplemental judgment and order granting CSI's motion to reconsider, vacate, alter or amend its previous order to the extent that its earlier opinion failed to address CSI's state claims. Those claims alleged (1) that the franchise award was made arbitrarily, capriciously, in bad faith, and constituted a gross abuse of discretion, in violation of Kentucky's constitution; and (2) that the franchise award to RV violated Kentucky law by granting RV an exclusive franchise when the city had solicited bids for a non-exclusive franchise. The court considered and rejected these claims, and awarded summary judgment on all counts to the defendants, prompting the present appeal.

## II.

CSI claims that summary judgment was improperly granted on several of its claims. Our review of a district court's grant of summary judgment is governed by the principles articulated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in which the Supreme Court stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322–23, 106 S.Ct. at 2552 (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

We first consider CSI's claim that the district court erred in concluding that, as a matter of law, the city did not act arbitrarily, capriciously, in bad faith, or abuse its

---

**4.** CSI's state law fraud claims were submitted for decision at the preliminary injunction hearing and disposed of in the court's opinion denying the injunction. In its initial opinion granting defendants summary judgment, the court only addressed CSI's antitrust claims.

discretion in conducting the franchise proceedings and in awarding the franchise to RV.

 The district court expressed its reticence to review municipal legislative decisions given the longstanding presumption that municipalities act properly in enacting legislation. *See Baskett v. Davis*, 311 Ky. 13, 223 S.W.2d 168 (Ky.Ct.App.1949). In *Baskett*, the court noted that when a municipality's exercise of its delegated power and discretion to reject bids is challenged in court, it is presumed that the municipality acted with reason, in good faith, and for the public benefit. Therefore, it would be improper for a court to substitute its judgment for that of the commission vested with the legislative power in the first place. The court scrutinized the resolution by which the city commissioners awarded the franchise to RV and found that the commission acted with reason, in good faith, and for the public benefit in placing more emphasis on the more favorable rates offered by RV, its proven track record, stable financial condition, and superior staffing. Moreover, the court dismissed any seeming procedural irregularities by pointing to the RFP itself, which expressly authorized the city to permit amendments, waive irregularities, and reject any and all bid proposals. The district court's characterization of the law in Kentucky is correct. The legislative act performed by a municipality in awarding a franchise cannot be set aside in the absence of fraud, collusion, or dishonesty. *HealthAmerica Corp. v. Humana Health Plan, Inc.*, 697 S.W.2d 946 (Ky. 1985) (absent fraud, collusion, or dishonesty, disappointed bidder lacks standing to challenge award of public contract to successful bidder). CSI has not suggested, let alone demonstrated, that any city commissioner stood to personally benefit from the award of the cable franchise to RV or any other applicant. No evidence indicated that the award decision was so irrational that it could only be explained as resulting from some personal benefit flowing to members of the legislative body. In reviewing the district court's denial of CSI's motion for a preliminary injunction, we indicated that the city commission's resolution awarding

the franchise to RV facially offered rational reasons for the challenged legislative action. CSI has not since persuaded us otherwise. Although CSI suggests some impropriety occurred because the city twice rejected its own expert's top choice for the franchise award (CSI), we find that the expert's role was to advise the commission and not to render the commission's decision. Woodard, himself, acknowledged that the city may elect to weigh certain aspects of the proposals differently than he did depending on the relative importance of different elements in the proposal. Although rates admittedly were not a top priority in Woodard's evaluation of the proposals, they were very much a priority to commission members concerned about the public. Woodard ranked RV's revised bid first in the category of subscriber rates. Moreover, having experienced difficulties with cable service in the past, the commission was impressed by RV's experience and reputation in adjacent communities. Hence, the resolution awarding the franchise to RV offers legitimate, rational reasons for preferring RV over CSI, notwithstanding Woodard's overall ranking of the proposals.

 CSI also claims that, by inexplicably abandoning competitive bidding and engaging in competitive negotiations, the city violated section 164 of Kentucky's constitution. That section states:

No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; *but it shall have the right to reject any or all bids*. This section shall not apply to a trunk railway.

(Emphasis added). We previously have noted that Kentucky courts have viewed section 164 as precluding the arbitrary, capricious, bad faith, or fraudulent grant of a franchise by a municipality. At the same

time, however, a city commission acting in a legislative capacity enjoys considerable discretionary authority. *Communications Systems Inc. v. Danville*, 787 F.2d 589 (unpublished) (citing *Hatcher v. Kentucky & West Virginia Power Co.*, 280 Ky. 583, 588–89, 133 S.W.2d 910, 913 (Ky.1939)). That discretion encompasses the authority to reject *any* bid for proper reasons. Moreover, a municipality can reject what appears to be the highest bid and accept a lower bid as the best bid if the decision is based on the exercise of sound discretion, untainted by arbitrariness or corruption. *Baskett*, 311 Ky. 13, 223 S.W.2d 168. We are not persuaded that the entire bidding and award process was calculated to compromise CSI's chances of obtaining the franchise and find no evidence that the ultimate decision rendered by the commission was arbitrary and capricious. The city's award of the franchise to RV satisfied the dictates of section 164 of Kentucky's constitution; the award to RV is for fifteen years, the availability of the franchise was publicly disseminated, proposals were accepted and discussed publicly, and the city commission determined that RV was the highest and best bidder.

■ Contrary to CSI's position, nothing in section 164 precludes amendments to franchise bids. Moreover, all applicant bidders had notice in the RFP that the city reserved the right to accept modifications. The city's decision to disseminate the various proposals, conduct a hearing on them, and permit amendments was actually triggered by CSI's counsel's request for the proposals to be circulated among the applicants and followed by a public hearing giving each applicant the opportunity "to respond to offers possibly being made by competitors." Finally, we note that both RV and CSI amended their proposals and that CSI raised no objections to the amendment procedures until after it lost the franchise to RV. We also note that the decision to permit amendments occurred prior to the date on which Woodard's initial evaluation of the proposals, which ranked CSI as his first choice for the franchise, was disclosed.[5] In fact, the public hearing and modification process succeeded in encouraging bidders to upgrade their proposals to offer the city the best possible cable television system at the best possible rates.

■ Lastly, CSI challenges the district court's grant of summary judgment for the defendants on its claim that the city violated Kentucky law, as enunciated in *Willis v. Davis*, 534 S.W.2d 255 (Ky.1976) (award of exclusive franchise is void when not advertised as such), by granting RV an exclusive franchise when the public advertisements characterized the franchise as nonexclusive. This claim stems from the city's rejection of CSI's proposal for an overlapping cable franchise award. We agree with the district court that the commission's decision to reject CSI's request for an overlapping franchise did not render the advertised non-exclusive franchise a *de facto* exclusive franchise. Rather than rejecting CSI's proposal outright, the city held a public hearing on the matter and asked its cable consultant to evaluate the proposal. At the hearing, CSI representatives admitted that it was unclear whether two cable companies could remain financially viable and that the impact of having two competing companies in Danville would be to diminish the incoming revenues to each company. CSI's proposal was not rejected until after the commission determined that having two competing cable companies operating in the Danville market at that time would be detrimental to the viability of both companies and, consequently, to the availability of cable television in the city. Although CSI contends that such a natural monopoly is tantamount to an exclusive franchise, the district court recognized that it is possible to award only one non-exclusive franchise, leaving open the possibility of awarding additional franchises when appropriate. *See Catalina Cablevision Associates v. Tucson*, 745 F.2d 1266 (9th Cir.

---

**5.** CSI claims that the results of Woodard's evaluation were known to the commission prior to the disclosure of Woodard's report and prompted the city's decision to permit amendments to the franchise proposals. CSI also claims that the city coddled RV along until it had sufficiently complied with the RFP to make it a viable contender for the franchise award.

1984) (cable television, like other utilities, is subject to legislative discretion regarding the initial and future number of licensees).

Because CSI has not demonstrated any genuine issue of material fact existing with regard to the city's conduct in the bidding or award process or its compliance with section 164 of Kentucky's constitution, which governs franchise awards, we conclude that summary judgment was properly granted to the defendants on these claims.

## III.

CSI's final argument is that the district court abused its discretion in denying its motions for leave to file amended complaints. CSI notes that its action was filed on April 16, 1984. CSI sought court leave to file a first amended complaint on July 11, 1984. CSI's first amended complaint alleged that the city violated Kentucky's Model Procurement Code (Code), Ky.Rev. Stat.Ann. § 45A, *et seq.*, as adopted by ordinance by the City of Danville. The district court did not rule on this motion until issuing its April 28, 1987, order of summary judgment against CSI, at which time the court denied the motion as moot. When CSI filed its motion for the court to reconsider, vacate, or alter and amend its April 28 judgment, it also sought court leave to file a second amended complaint reasserting the allegations from its first amended complaint and alleging, for the first time, violations of its first amendment rights. CSI claimed that recent changes in the law provide first amendment protection to cable operators in the municipal franchising context against arbitrary governmental silencing. *Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986). In its September 22, 1988, supplemental opinion granting CSI's motion to amend, the district court dismissed all of CSI's claims and ordered the action dismissed and stricken from the docket. In so doing, the court implicitly denied CSI's motion for leave to file its second amended complaint.

Our review of this issue is guided by Fed.R.Civ.P. 15(a), which provides:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action had not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

Because the defendants had filed a responsive pleading to CSI's complaint prior to CSI's attempt to amend, CSI had to obtain court leave to file any amended complaints. We conclude that the court did not abuse its discretion in denying either of CSI's requests for leave to file amended complaints.

■ CSI's first amended complaint sought to allege that the city's bidding and award procedures violated the Code. The issue raised relative to this allegation is whether the Code applies to the award of a cable television franchise. Section 163 of Kentucky's constitution provides:

Public Utilities Must Obtain Franchise to Use Streets. No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply.

As previously noted, section 164 of Kentucky's constitution authorizes municipalities to grant such franchises to the highest and best bidder and reserves to the municipality the right to reject any and all bids. In *Owensboro v. Top Vision Cable Co.*, 487 S.W.2d 283 (Ky.1972), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1926, 36 L.Ed.2d 410

**894**

(1973), the court determined that the right to operate a cable television in a city is subject to state franchise requirements set forth in sections 163 and 164 of Kentucky's constitution.

The Code deals primarily with purchases by governmental units. *Ohio River Conversions v. Owensboro,* 663 S.W.2d 759, 761 (Ky.App.1984). Section 45A.010(2)(a)–(g) of the Code sets forth the Code's underlying purpose and policies, which are:

(a) To simplify, clarify, and modernize the law governing purchasing by the Commonwealth;

(b) To permit the continued development of purchasing policies and practices;

(c) To make as consistent as possible the purchasing laws among the various states;

(d) To provide for increased public confidence in the procedures followed in public procurement;

(e) To insure the fair and equitable treatment of all persons who deal with the procurement system of the Commonwealth;

(f) To provide increased economy in state procurement activities by fostering effective competition; and

(g) To provide safeguards for the maintenance of a procurement system of quality and integrity.

Section 45A.020 of the Code provides that the Code "shall apply to every *expenditure of public funds by this Commonwealth* under any contract or like business agreement." (Emphasis added). Procurement is defined as "the purchasing, buying, renting, leasing, or otherwise obtaining of any supplies, services, or construction" and as encompassing "all functions that pertain to the obtaining of any supply, service, or construction item, including description of requirements, selection and solicitation of sources, preparation and award of contract,

and all phases of contract administration." Ky.Rev.Stat.Ann. § 45A.030(15).

In arguing that the Code governs the city's cable television franchise bidding and award procedures, CSI relies on *E.M. Bailey Distributing Co. v. Conagra,* 676 S.W. 2d 770 (Ky.1984), and *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet,* 758 S.W.2d 24 (Ky.1988). In *Conagra,* the court determined that an operating agreement through which a river port authority leased grain-loading facilities to Conagra granted Conagra a franchise without satisfying the franchise requirements of section 164 of Kentucky's constitution.[6] The court, citing *Ohio River Conversions,* 663 S.W.2d 759, noted that the Code did not apply because the Code had not been adopted locally. We do *not* read that dicta as implicitly providing that if a governmental unit has adopted the Code, the Code extends to franchises otherwise governed by Kentucky's constitution. The *Ohio River Conversions* court, as previously noted, indicated that the Code "deals almost entirely with purchases by units of government," and that the Code's primary purpose is to benefit the public and not unsuccessful bidders. In *Ohio River Conversions,* the high but unsuccessful bidder for the purchase of a boat dock owned by the city sought an order compelling the city to accept his bid and to enjoin the transfer of the dock to the prevailing bidder. The unsuccessful bidder alleged violations of the Code. After noting that the Code deals primarily with purchases by local government, the court noted that section 45A.425 of the Code also covers government disposal of surplus property. Nevertheless, the court noted that the provisions governing the *sale* or disposal of surplus property are permissive and not mandatory. Accordingly, the court found that the unsuccessful bidder lacked standing to bring a cause of action under the Code.

---

**6.** The *Conagra* court defined a franchise as "a right or privilege granted by a sovereign power, government or a governmental entity to a party to do some act which such party could not do without a grant from the government." *Conagra,* 676 S.W.2d 770, 771 (citations omitted).

The *Conagra* court determined that the operating agreement constituted a franchise through which the governmental authority granted Conagra a privilege by virtue of the government's control over waters and wharfs. *Id.* at 772.

In *Pendleton Bros. Vending, Inc.*, 758 S.W.2d 24, the court concluded that, notwithstanding case law prior to the Code's enactment, the Code gives disappointed bidders standing to challenge the propriety of government purchasing contracts even if such bidders fail to allege specific acts of fraud, collusion, or dishonesty. That case involved a challenge to the Commonwealth of Kentucky's award of a contract to "place, service and stock automated vending machines in state-owned rest areas served by the interstate highway system in Kentucky." 758 S.W.2d at 25. Throughout the opinion, the court refers to the Code's application to government "purchasing" procedures. The court's opinion contains no references to franchises and does not characterize the vending machine contract at issue as a franchise.[7]

We are persuaded that the instant case is controlled by sections 163 and 164 of Kentucky's constitution rather than by the Code. Although the Code governs *purchasing*, the granting of a franchise involves selling the right to utilize the public streets and ways. Accordingly, such sales are not subject to the provisions of the Code. *Ohio River Conversions, Inc.*, 663 S.W.2d 759, 761. Rather, section 164 of Kentucky's constitution governs the granting of a cable television franchise. This view is also borne out by the Kentucky attorney general's opinion in OAG 80–391, dated July 15, 1980, an opinion involving the award procedures for a cable television franchise.[8] That opinion provides in pertinent part:

Actually, § 164 of the Constitution is self-executing and requires no implementing statutes as to bidding requirements. Thus, the model procurement code, even where the fiscal court has adopted it, has no application to the issuance of a franchise ... The bidding provisions of § 164, *i.e.*, the "highest and best bidder" language, controls.

(Citations omitted).

Because we are persuaded that CSI's tendered amendment would not have survived a motion to dismiss for failure to state a claim upon which relief could be granted, the district court did not abuse its discretion in denying CSI's first motion for leave to amend its complaint. *See Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985) (no abuse of discretion in denying amendment to add new claims that lack substantial merit).

■ As for CSI's second amended complaint that the defendants violated its first amendment rights by barring it from operating a competing cable television system, we note that this claim was not raised until after summary judgment was initially granted in favor of the defendants. Although CSI's claim arose from the same set of facts giving rise to its original claim, CSI omitted its first amendment claim from its original complaint. As the city points out, this omission may have been intentional because it would have been contradictory for CSI to advocate to overturn the franchise award to RV in favor of itself while simultaneously contending that neither CSI nor RV needed a franchise to exercise their right, under the first amendment, to operate. CSI claims that it failed to raise the

7. In *Pendleton Brothers*, the state, consistent with the Code, provided that the contract would be awarded to a responsible bidder offering the state the highest percentage of commissions on gross sales. The state recommended awarding the contract to a company that bid a commission rate that was 3.7% less than the high bidder. Following adverse publicity linking the recommended bidder politically with the "Collins for Governor" campaign, the state changed from a competitive bidding procedure to a competitive negotiation procedure authorized by the Code upon written evidence that the competitive bidding is not practicable. The company linked with the political campaign was awarded the contract, which prompted a protest filed pursuant to the Code, and the subsequent lawsuit. The court concluded that the Code gave the plaintiffs standing to sue, noting that "[t]he availability of legal recourse is essential if the [Code] is to constitute more than a precatory body of law." *Pendleton Bros.*, 758 S.W.2d at 30.

8. The attorney general's opinion disagrees with CSI's claim that, implicitly, under *Conagra*, the Code applies to a franchise if a municipality has adopted the Code by ordinance. As noted, *Conagra's* discussion of the Code references *Ohio River Conversions, Inc.*, discussed *supra*.

issue earlier because, at the time it tendered its second amended complaint, the first amendment issue in cable television was relatively new. We disagree. As early as 1982, in *Hopkinsville Cable TV v. Pennroyal Cablevision*, 562 F.Supp. 543 (W.D.Ky.1982), the possibility of first amendment protection in the field of cable television was recognized. *See also Consolidated Television Cable Service, Inc. v. Frankfort*, 857 F.2d 354 (6th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1537, 103 L.Ed.2d 842 (1989), in which CSI's attorneys also raised the issue. The tardiness of CSI's second motion for leave to file an amended complaint coupled with our rejection of its explanation for the delay persuades us that the district court did not abuse its discretion in denying the requested leave.

Finding ourselves in accord with the district court's resolution of this matter, we AFFIRM.